# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SERGEANT WILBUR F. JUSTICE,    )
           )
       Plaintiff,      )
           )
    v.           )
           )    C. A. No. 06-497-SLR
STANLEY W. TAYLOR, JR., in his    )
official capacity as the Commissioner    )
of Correction; ALAN MACHTINGER    )
individually and in his official capacity    )
as the Director of Human Resources    )
of the Department of Correction;    )
and DEPARTMENT OF CORRECTION)
of the STATE OF DELAWARE,    )
           )
       Defendants.    )

## DEFENDANTS' OPENING BRIEF

## IN SUPPORT OF SUMMARY JUDGMENT

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Marc P. Niedzielski (ID 2616)
Stephani J. Ballard (ID 3481)
Deputy Attorneys General
820 North French Street
6th Floor
Wilmington, DE 19801
(302) 577-8324

DATED:  February 26, 2008

## <u>TABLE OF CONTENTS</u>

TABLE OF CITATIONS ....................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

SUMMARY OF THE ARGUMENT ................................................................. 2

STATEMENT OF THE FACTS ......................................................................... 3

ARGUMENT....................................................................................................... 7

I.  THE DEPARTMENT, TAYLOR AND MACHTINGER, IN HIS OFFICIAL
    CAPACITY, ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
    PURSUANT TO THE ELEVENTH AMENDMENT ........................................... 7

    (a)  The Eleventh Amendment.............................................................. 8

II. THE § 1983 RETALIATION CLAIMS AGAINST ALAN MACHTINGER IN
    HIS INDIVIDUAL CAPACITY FAIL AS A MATTER OF LAW, AS
    PLAINTIFF ADMITS HE DID NOT ENGAGE IN PROTECTED ACTIVITY,
    HE HAS NOT EVINCED ANY WRONGDOING BY THE INDIVIDUAL
    DEFENDANT    AND HE SUFFERED NO ADVERSE EMPLOYMENT
    ACTION ......................................................................................... 13

    (a)  No protected activity ...................................................................... 15

    (b)  Alan Machtinger was not aware of plaintiff's application nor did he take any
         adverse action toward plaintiff........................................................ 18

    (c)  No adverse employment action................................................... 21

III. DEFENDANT MACHTINGER IS ENTITLED TO QUALIFIED IMMUNITY
     EVEN IF PLAINTIFF COULD ESTABLISH ANY PROTECTED CONDUCT
     AND ANY ADVERSE EMPLOYMENT ACTION, SINCE THE BOUNDARIES
     OF THE LAW AS TO WHAT IS CLEARLY ESTABLISHED HAS NOT BEEN
     DETERMINED ............................................................................... 24

CONCLUSION ................................................................................................. 25

<u>UNREPORTED DECISION</u>
*Department of Correction v. Justice and MERB,*
      C.A. No. 06A-12-006(RBY), (Del.Super. Aug. 23, 2007)

i

## TABLE OF CITATIONS

*Alden v. Maine,* 527 U.S. 706 (1999) ................................................................... 9

*Ambrose v. Township of Robinson, Pennsylvania,*
    303 F.3d 488 (3d Cir. 2002) ..................................................... 14, 18, 22

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................................... 7

*Barkoo v. Melby,* 901 F.2d 613 (7th Cir. 1990) ................................................ 18

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)............................................... 7, 8

*Curley v. Klem,* 499 F.3d 199 (3d Cir. 2007) .................................................. 24

*Department of Correction v. Justice and MERB,*
    C.A. No. 06A-12-006(RBY), (Del.Super. Aug. 23, 2007) ................................ 5, 6

*Edelman v. Jordan,* 415 U.S. 651 (1974) ......................................................... 11

*Fogarty v. Boles,* 121 F.3d 886 (3d Cir. 1997).................................................. 18

*Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006) ................................................... 15

*Hampton v. Borough of Tinton Falls Police Dept.,* 98 F.3d 107 (3d Cir. 1996) ............... 8

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006)........................................ 15, 24

*Kentucky v. Graham,* 473 U.S. 159 (1985) ......................................... 10, 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)........................ 8

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ......................................................... 9

*Will v. Michigan Department of State Police,* 491 U.S. 58 (1989)................................. 11

## OTHER AUTHORITIES

First Amendment of the United States Constitution ....................................*passim*

Eleventh Amendment of the United States Constitution............................................*passim*

42 U.S.C. § 1983 ................................................................................*passim*

42 U.S.C. § 1988(b) ...................................................................................... 10

Fed.R.Civ.P. 50............................................................................................ 18

Fed.R.Civ.P. 56(c) .......................................................................................... 7

## NATURE AND STAGE OF THE PROCEEDINGS

On August 11, 2006, plaintiff commenced this action under 42 U.S.C. § 1983 wherein he alleges that defendant Alan Machtinger retaliated against him for his protected activities during the period June to August 2004.  Plaintiff also named as defendants, the Department of Correction of the State of Delaware for possible recovery of attorney fees, and former Commissioner Stanley W. Taylor, Jr. solely in his official capacity for possible injunctive relief.  (Complaint, D.I. 1)

On December 18, 2006, the defendants answered by denying any wrongdoing and asserting a number of defenses. (Answer, D.I. 7)

On March 31, 2007, the U.S. Magistrate Judge entered a Scheduling Order. (D.I. 14)  Thereafter the parties engaged in discovery and stipulated to a number of extensions. (D.I. 36, 47, 49)

This is Defendants' Opening Brief in support of their concurrently filed motion for summary judgment.

## SUMMARY OF THE ARGUMENT

### I.

The Eleventh Amendment bars plaintiff's claims against the Department of Correction of the State of Delaware, as well as any damages against the individual defendants in their official capacities. Since the plaintiff retired from State service on February 1, 2007, there is no basis in maintaining a request for injunctive relief against the defendants Machtinger or Taylor.

### II.

The record reveals a complete failure of evidence in a First Amendment retaliation claim. The record is undisputed that plaintiff never engaged in protected activity, that defendant Machtinger was unaware of plaintiff's application for a position, had no motive to retaliate against plaintiff, and the non-selection of plaintiff for the position was unrelated to any union activity.

### III.

Even if some of plaintiff's union activities could be viewed as protected, defendant Machtinger is entitled to qualified immunity as the law regarding government employees' First Amendment rights is not clearly established under the present facts and circumstances.

## STATEMENT OF THE FACTS

The plaintiff is Wilbur F. Justice who began his employment with the Department of Correction of the State of Delaware as a Correctional Officer in 1982. Following initial training, plaintiff was assigned to the John C. Webb Facility located in Prices Corner, Wilmington, Delaware. After approximately one and a half years, plaintiff was assigned to what is now known officially as the Howard R. Young Correctional Institution ["HRYCI"], but has been called Gander Hill which is located in urban Wilmington, Delaware. (Wilbur Justice October 17, 2007 Deposition Transcript ["Justice Tr."] 16-18, Appendix to Defendants' Opening Brief [hereafter "A"] 7-8)

In October 1988, plaintiff was promoted to Sergeant and was assigned as Lead Worker or Rover within the Gander Hill facility. In 1990, he was assigned to Booking and Receiving location within the facility. Thereafter, plaintiff made application twice for the position known as Community Work Program Coordinator [hereafter "CWPC"] which is central to plaintiff's claims. He first applied in 1999 and again in 2001. However, on both applications he was informed that he was unqualified for the position. (Plaintiff's Response to Defendants' Request for Admissions No. 5 and 6, A 55-56)

In 2001, on plaintiff's second application for a transfer as a Correctional Officer to the Morris Community Correctional Center (which was formerly known as the Morris Correctional Institution ["MCI"]), he was accepted and transferred to MCI as a Correctional Sergeant. MCI is a correctional facility that functions as a work release and half-way house, located in downtown Dover, Delaware. (Justice Tr. 22-23, A 9)

In July, 2004, a Correctional Counselor who works within the Secured Housing

Unit of the Delaware Correctional Center was taken hostage and assaulted by an inmate to whom she had been assigned.  The hostage incident was ended by the Correctional Emergency Response Team that was forced to shoot and kill the inmate.  This incident received media coverage.

During the same period, the present Governor was campaigning for reelection and the union, known as COAD[1], which represents the correctional officers up to the rank of Sergeant was involved in some campaign advertisements.  Meanwhile there were contract negotiating meetings between COAD and some of the management of the Department.  These negotiating meetings were conducted during normal work hours at the Department's administrative headquarters building in Dover, Delaware.  Plaintiff was a vice-president in COAD that represented MCI, and was on the executive board of COAD.  The executive board and the professional labor negotiators would meet in one room, while management and labor specialists from the State Personnel Office would meet in another room.  Proposals were passed in writing between the rooms.  All the COAD employees that attended these sessions were on "release time" which means that they were paid their normal salary while they performed union activities. (Justice Tr. 83-89, A 24-25)

On July 15, 2004, plaintiff submitted an application for an opening announced at MCI for a position known as Community Work Program Coordinator at pay grade 9.  The position's incumbent's duties include arranging with local employers to offer employment to offenders and counseling and assisting offenders for employment.

---

[1] Correctional Officers Association of Delaware

Plaintiff was provided a clocked-in copy of his application. On July 22, 2004, a technician with Human Resources, who is not a party to this lawsuit, prepared the Certification List of qualified individuals, which was forwarded to MCI where the interviews and selection would occur. (Plaintiff's Amended Response to Defendants' 1st Set of Interrogatories No.1, P. 24-25; A 84-85)

On August 13, 2004, plaintiff contacted the same above HR technician inquiring about the interviews and was provided incorrect information. On Monday, August 16, 2004, plaintiff while on vacation learned that the interviews for the position were to be conducted that same day. Plaintiff went to the HR office and showed the technician his clocked-in copy of his application. Plaintiff's name was added to the interview list for that day and he was interviewed by the panel. Plaintiff never requested more time to prepare for the interview nor did he ask for the interview to be postponed. (Plaintiff's Amended Response to Defendants' 1st Set of Interrogatories No.1, P. 24-28; A 84-88)

The panel did not recommend plaintiff for the CWPC position, instead they recommended Hansel Fuller, ["Fuller"]. The recommendation was made to Warden Vincent Bianco, who is not a party to this lawsuit nor is it alleged that his decision was for any improper motive. Warden Bianco accepted the panel's recommendation and offered the CWPC position to Fuller who accepted. (*Department of Correction v. Justice and MERB*, C.A. No. 06A-12-006 (RBY)(Opinion and Order) (Del.Super. Aug. 23, 2007) at 3.

In September 2004, plaintiff was informed by letter that he was not selected for the position by the Chair of the Interview Panel. *Id.*

- 5 -

On September 23, 2004, plaintiff commenced the Grievance Procedure wherein he claimed that he had more knowledge of the security procedures and knew the job duties of the CWPC and that it was a gross abuse of discretion to not give him the position. Plaintiff was unsuccessful through the three Step grievance hearings. *Id.*

On November 29, 2006, the Merit Employees Relations Board [hereafter "MERB"] reversed and granted plaintiff some relief. *Id.*

On February 1, 2007, plaintiff retired from State service. (Justice Tr. at 28, lines 12-13, A 38)

On August 23, 2007, the Superior Court of Kent County reversed and remanded the MERB's decision. *Id.*

## ARGUMENT I.

THE DEPARTMENT, TAYLOR AND MACHTINGER, IN HIS OFFICIAL CAPACITY, ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW PURSUANT TO THE ELEVENTH AMENDMENT.

### Introduction:

This lawsuit is a 42 U.S.C. § 1983 civil rights action where the plaintiff contends that his application for an employment position was intentionally interfered with on July 16-19, 2004, so that plaintiff learned of his interview on the day it was to occur. Plaintiff alleges that this interference placed him at a disadvantage over the successful candidate. The complaint alleges that these actions were in retaliation of his exercise of his first amendment rights. The sole individual defendant from whom damages are sought is Alan Machtinger, who was the Director of Human Resources in 2004. Plaintiff seeks injunctive relief and attorneys fees for which he has named the other defendants in their official or sovereign capacity. (complaint, D.I. 1)

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "may reasonably be resolved in favor of either Party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 259 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, at 323. However, the moving party need not support its motion with affidavits or other documents disproving the nonmoving party's claim, but need only "show - - that is point out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325. The nonmoving party must go beyond the pleadings and through affidavits or other evidence demonstrate the existence of a genuine issue of material fact. *Id.*, at 314. The district court is required to construe the evidentiary record so as to give the nonmoving party reasonable factual inferences. *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). Summary judgment should be granted if the court finds, in consideration of all of the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

For the reasons that follow, the Department of Correction, Stanley Taylor and Alan Machtinger, in his official capacity, are entitled to judgment as a matter of law pursuant to the Eleventh Amendment.

### (a)    The Eleventh Amendment:

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court in describing the immunity of states from suit observed that

"Eleventh Amendment immunity...is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today except as altered by the plan of the Convention or certain constitutional Amendments." *Id.* In his complaint, plaintiff contends that "Defendant Department of Correction is an agency of the State of Delaware, which is only joined in this action for purposes of collecting attorneys' fees and costs." (complaint at ¶ 6; D.I. 1) Plaintiff concedes that the Department is an agency of the State and is therefore immune under the Eleventh Amendment.

Based on correspondence between counsel, plaintiff will rely on the Supreme Court's decision in *Missouri v. Jenkins*, 491 U.S. 274 (1989) for the proposition that despite the Eleventh Amendment, the State can be made a party for collection of attorney's fees. The plaintiff is mistaken and the Supreme Court's precedent is clear that there is no such exception to the Eleventh Amendment.

*Missouri v. Jenkins* was a school desegregation case that went before the Supreme Court on a number of occasions. On the cited occasion, the issue was the proper calculation of attorney's fees to the prevailing plaintiffs following trial and injunctive

relief.  The attorney's fees at issue were authorized under 42 U.S.C. § 1988(b)[2].  In that case, a number of Missouri officers were sued in their official capacity and following the *Ex Parte Young* doctrine,  the Eleventh Amendment did not bar injunctive relief against a state actor in their official capacity for continuing violations of federal law, and therefore, attorneys fees are available under § 1988(b).

However, for any party to be subject to attorneys fees under § 1988(b), that same party must have violated civil rights acts as set out in the statute.  Plaintiff does not allege nor does the record support any § 1983 claims against the Department of Correction of the State of Delaware or Stanley W. Taylor, Jr..

The Supreme Court's decision in *Kentucky v. Graham,* 473 U.S. 159 (1985) forecloses plaintiff's contention that a State and other state officers in their official capacities can be made a party for collection of attorney's fees.

───────────────────

2 Which provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

Naming the Commonwealth for fees did not create, out of whole cloth, the cause of action on the merits necessary to support this fee request. Thus, no claim for merits relief capable of being asserted in federal court was asserted against the Commonwealth of Kentucky. In the absence of such a claim, the fee award against the Commonwealth must be reversed. *Id.* at 170.

The Eleventh Amendment bars the claims for attorney fees against the State and any § 1983 claim against Stanley W. Taylor, Jr., in his official capacity. *Id*. at 169, n. 17.

While plaintiff claims to be a citizen of Delaware in his complaint (¶ 3; D.I. 1), the Supreme Court has held that lawsuits by a State's own citizens are also barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974) ["While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State." (citations omitted)]

Plaintiff also asserts claims against Stanley W. Taylor, Jr., solely in his official capacity "for injunctive relief" and asserts claims against Alan Machtinger in his individual and official capacity.  (complaint at ¶ 4, ¶ 5; D.I. 1) Plaintiff does not allege any violation of § 1983 against Taylor.  Plaintiff and Defendant Taylor retired from the Department of Correction on February 1, 2007, and those retirements would vitiate any need for injunctive relief in the employment context.  Accordingly, the only remaining claim against Machtinger, in his official capacity[3], would be for retrospective damages

_____

3 Aside from the immunity issue, state employees sued in their official capacities are not persons for § 1983 purposes.  *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989).

that are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, at 169.

Defendant Department of Correction, Stanley W. Taylor, Jr. and Alan Machtinger, in his official capacity, are entitled to judgment as a matter of law under the Eleventh Amendment.

## **ARGUMENT II.**

THE § 1983 RETALIATION CLAIMS AGAINST ALAN
MACHTINGER IN HIS INDIVIDUAL CAPACITY FAIL AS A
MATTER OF LAW, AS PLAINTIFF ADMITS HE DID NOT ENGAGE
IN PROTECTED ACTIVITY, HE HAS NOT EVINCED ANY
WRONGDOING BY THE INDIVIDUAL DEFENDANT  AND HE
SUFFERED NO ADVERSE EMPLOYMENT ACTION.

The sole § 1983 claim in this action is against Alan Machtinger.  Plaintiff alleges
that Machtinger knew of his alleged protected union activity and sometime between July
16 to 19, 2004, caused to be hidden or misplaced plaintiff's application for the
Community Work Program Coordinator ["CWPC"] position within the Department at the
Morris Correctional Institution in Dover, Delaware.  (Plaintiff's Amended Response to
Defendants' 1st set of Interrogatories, No. 1, part F, p. 23, p. 29; D.I. 40; A 83, A 89)
Plaintiff contends that he was given incorrect information by another employee, not
Machtinger, on the day that the interviews would be conducted and only found out on the
day that interviews were to be conducted.  On August 16, 2004, plaintiff and four other
employees were interviewed by the panel of three Department employees who are not
parties to this lawsuit. It is not alleged that the panel's decision was for any improper
motive.

The panel did not recommend plaintiff for the CWPC position, instead they
recommended Hansel Fuller, ["Fuller"].  The recommendation was made to Warden
Vincent Bianco, who is not a party to this lawsuit nor is it alleged that his decision was
for any improper motive.  Warden Bianco accepted the panel's recommendation and
offered the CWPC position to Fuller who accepted.

Plaintiff asserts that if he had more notice he would have brought some documents and would have done better on the interview. Plaintiff does not provide any evidence to support his contention that if he did better at the interview, that he would have been recommended for the position.

The elements of a § 1983 First Amendment retaliation lawsuit are well established. Plaintiff must establish that: (1) he engaged in conduct that was protected under the First Amendment; (2) that he suffered some adverse employment action; (3) that the adverse action was motivated by the protected conduct; and, (4) even after establishing the above three elements, a defendant can defeat the plaintiff's case by showing that it would have taken the same action even in the absence of protected conduct. (internal citations omitted) *Ambrose v. Township of Robinson, Pennsylvania*, 303 F.3d 488, 493 (3d Cir 2002).

Defendant Machtinger moves the Court to grant judgment in his favor and put an end to the allegations[4] personally leveled against him that have no basis in fact or law. Additionally, all defendants move for judgment as: (1) plaintiff *by his own admission and testimony* did not engage in any protected conduct; (2) Alan Machtinger had no knowledge nor involvement in plaintiff's application problem (in fact, defendant was on vacation or off from work from July 17 until August 10, except for three days, July 26 – July 28, 2004); and, (3) plaintiff did not suffer an adverse employment action that is

---

[4] On August 11, 2006, the same day the Complaint was filed in this matter, the Neuberger Firm published a press release wherein Alan Machtinger was publicly named and these same unsubstantiated allegations were repeated as personal attacks against him. (A 51) However, the defendants were not served with the complaint until more than 2 months later on December 1, 2006. (D.I. 3, 4 & 5)

attributable to any First Amendment activity.

**(a)     No protected activity**

Under the case of *Hill v. Borough of Kuztown*, 455 F.3d 225, 243-244 (3d Cir 2006) citing to *Garcetti v. Ceballos*, 126 S.Ct 1951, 1958 (2006), a public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made. A public employee does not speak "as a citizen" when he makes a statement "pursuant to [his] official duties." *Garcetti* at 1960. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record[5]." (internal citations omitted)

While this lawsuit is based on retaliation for protected conduct, the plain truth is that the plaintiff did not engage in any protected activity at all. Plaintiff's complaint and responses to discovery are replete with numerous reported incidents and **other union member's** quotes to the media and conduct of others that could be protected. However, plaintiff admits that **he personally did not make any speech, he did not speak to the**

---

[5] As set out in the statement of facts on page 4, it is undisputed that plaintiff was on the executive board of COAD and may have participated in negotiating a new labor agreement. However, that would not be protected activity as in those sessions plaintiff was clearly acting as an employee in attempting to come to terms with management over conditions of employment. The sessions were conducted at the Department Administrative Center, and plaintiff was paid by his employer for these union activities as they were considered part of his job duties. *See Garcetti.* Moreover, plaintiff does not identify specific conduct that would be expressive for purposes of the First Amendment.

**media and he was not quoted in the media**.  At his deposition on October 17, 2007,

plaintiff testified as follows:

> Q.    Can you recall or tell me where in any of those [newspaper] articles you are quoted?
>
> A.    In 2004?
>
> Q.    Yes.
>
> A.    In these articles from 2004 what they – if you are asking me did I personally say anything?  Is that what you are asking me?
>
> Q.    Yes.
>
> A.    **I didn't personally say anything,** but at the same time that the executive board is made up for us to represent the members and what we say in the president on down because the president and senior vice-president are the ones to speak to the media, newspaper or radio, or whether it be call for deposition, but whatever is being said has been discussed between the executive board.
>
> Q.    Just so we are clear you were never quoted as saying anything in 2004?
>
> A.    **In 2004, I was never personally quoted as saying anything.**
>
> Q.    Did you make any statements, public statements in 2004?
>
> A.    **In 2004 me personally speaking to the media I personally didn't say anything.**

(emphasis added) (Justice Tr., p.91, l.24 to p. 92, l. 23, A 26)

On October 17, 2007, plaintiff responded to defendants' request for admission and

admitted to the following:

> 1.    Plaintiff, Wilbur Justice, was not quoted in any newspaper articles pertaining to the Delaware Department of Correction (DOC) published at any time between June and August, 2004.

- 16 -

2.    Plaintiff, Wilbur Justice's, name does not appear in any newspaper articles pertaining to the DOC published at any time between June and August, 2004.

3.    On July 15, 2004, Plaintiff submitted his application for Community Work Program Coordinator to the DOC Human Resources Office.

4.    On July 15, 2004, the DOC Human Resources Office retained one copy of Plaintiff's application, and one copy of the application was stamped "received" and returned to Plaintiff.

5.    Plaintiff had previously applied for the position of "Community Work Program Coordinator" in 1999 and was found not to meet minimum qualifications for the position.

6.    Plaintiff had previously applied for the position of "Community Work Program Coordinator" in 2001 and was found not to meet minimum qualifications for the position.

* * *

18.    The selection and recommendation of Hansel Fuller as the successful applicant was done by the three-member interview panel.

(Plaintiff's Answers and Objections to Defendants' Request for Admissions to Plaintiff Pursuant to F.R.C.P. 26, October 17, 2007; D.I. 42, A 54-56, A 58).  The above demonstrates that it is undisputed that the plaintiff did **not** engage in any public speech that could be protected activity.  In plaintiff's pleading and his responses to discovery, he attempts to identify other members of the union that engaged in conduct that could be protected, but he does not identify any conduct protected by the First Amendment that he engaged in.  Since plaintiff did not personally participate in conduct that could be protected by the Constitution, he cannot evince a retaliation claim under § 1983.

*Ambrose v. Township of Robinson*, 303 F.3d at 495; *Fogarty v. Boles,* 121 F.3d 886, 890 (3d Cir 1997) citing *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990).

In *Ambrose,* the plaintiff police officer alleged that he was suspended in retaliation for his aid and support of a fellow officer's lawsuit against the township.  The Court of Appeals reversed the district court's denial of defendants' motion under Fed.R.Civ.P 50, as the plaintiff had not engaged in any protected conduct and there is no First Amendment protection by virtue of another employee's possibly protected conduct.  The *Ambrose* Court held that a § 1983 retaliation claim must be based on protected conduct by the plaintiff himself.

Likewise in *Fogarty,* the Third Circuit ruled that a retaliation claim under § 1983 must be predicated on actual protected conduct.  The plaintiff teacher in *Fogarty* alleges that he was punished due to the principal's mistaken belief that the plaintiff had called the press about a matter of public interest at the school.  The Court held that the absence of actual protected conduct by the plaintiff was fatal to any retaliation claim.

**(b)     Alan Machtinger was not aware of plaintiff's application nor did he take any adverse action toward plaintiff**

The second failure of evidence in this case, is the utter lack of any evidence to support the inflammatory and unsubstantiated allegations in the complaint personally directed against defendant Machtinger.  The complaint and corresponding "Neuberger Firm Press release" contain claims that Alan Machtinger personally interfered with the application process to retaliate against plaintiff based on the conduct by other union members.  There is not even a scintilla of evidence to support plaintiff's claims.  To the

contrary, the evidence is undisputed that Alan Machtinger was not aware (nor would he have been) that plaintiff applied for the CWPC position until long after plaintiff interviewed with the panel for the position. Moreover, Alan Machtinger was on vacation or off work for the relevant period from July 17 until August 10, except for three days, July 26 – July 28, 2004. (Machtinger Affidavit, A 1)

When plaintiff deposed Alan Machtinger on September 13, 2007, his attorneys did not ask a single question about the fundamental issue of whether he retaliated against plaintiff. The reason is plain that plaintiff's lawyers knew that Alan Machtinger had nothing to do with plaintiff's misplaced application.

While plaintiff's lawyers did not ask the fundamental questions of this case, Machtinger's own attorneys did ask those questions. (Machtinger Deposition Transcript, A 48-49) Starting at page 67, line 4 and ending on page 70, line 5.

> BY MS. BALLARD:
> Q.    Let me just pick up on the last line of questioning about Wilbur Justice's application. When is the very first time you learned about Wilbur Justice's application being either misplaced or there being some problems with the processing of that application?
>
> A.    In preparation for the Step 3 grievance hearing.
>
> Q.    And approximately when would that have been?
>
> A.    Maybe early 2005. Maybe a little later than that.
>
> Q.    Did you at any point in the summer of 2004 have any knowledge of Wilbur Justice's application, let's just use the term, being misplaced?
>
> A.    Absolutely not.

Q.      Did you have any personal involvement in the summer of 2004 in the handling of Wilbur Justice's application?

A.      Absolutely not.

Q.      Did you give direction to anyone in human resources in the summer of 2004 as to how to handle Wilbur's application?

A.      Absolutely not.

Q.      Do you have any animosity towards Wilbur Justice?

A.      Not in the slightest.

Q.      Did you in the summer of 2004?

A.      Not in the slightest.

Q.      Actually, how well did you know Wilbur Justice at that time?

A.      Then and now, very little.  At that point he was one of many vice presidents of the union.  We had had little or no personal interaction. He was a representative from the smallest institution that we have.  I don't recall that we had at that point any conversations or any interaction other than being across the table from each other at negotiating sessions when we were altogether in one group.

Q.      Did you have any reason in the summer of 2004 to want to affect Wilbur Justice' application process for the community work coordinator position?

A.      No.  Nor would I for anybody's position at any time during my career.

Q.      You mentioned that Larry Klebart may not have known about when, either that the interviews were scheduled or when they were scheduled.  Why would he have not known that?

A.      Because interviews are scheduled at the institutional level. We provide a list.  They schedule the interviews.  They make the selections. They will then send notification back after the selections are made.

- 20 -

Q.      So in this case, the interviews would have been scheduled by someone at, I believe it was the Morris facility?

A.      That's correct.

Q.      Do you know who at the Morris facility would have scheduled the interviews?

A.      No, I don't.

Q.      Based upon what you have come to understand about the process from the MERB proceeding and this litigation, your testimony was that Wilbur Justice may not have been treated identically as the other candidates.  In your opinion, was that a result of someone's ill intent or just a mistake or something else?

A.      I have no doubt that any mistakes that were made were not ill intent.  They would have just been inadvertent errors.

Q.      Do you have any reason to believe Wilbur Justice was treated unidentically by anyone because he was a union official?

A.      Absolutely not.

The above testimony is undisputed and the affidavit of Alan Machtinger makes it clear that he was off work or on vacation for the period from July 17 until August 10, except for three days, July 26 – July 28, 2004. (Machtinger Affidavit, A 1)  There is no evidence that Alan Machtinger retaliated or even had a reason to retaliate against the plaintiff.

Defendant Machtinger is entitled to summary judgment in his favor and against the plaintiff.

## (c)      No adverse employment action

While plaintiff was not recommended or subsequently offered the position of CWPC at MCI, there is no evidence that it was an adverse employment action.  A required element of a § 1983 First Amendment retaliation case requires that plaintiff

prove that the adverse action was motivated by the protected conduct. (internal citations omitted) *Ambrose v. Township of Robinson, Supra* 303 F.3d at 493. The record establishes that there is no causal connection between plaintiff's union activity and his not being recommended by the interviewing panel nor his not being selected for the CWPC position by Warden Bianco.

Plaintiff testified that he was aware of at least three union members who were on the executive board like him during the relevant period that were promoted. One of those promoted was a very vocal and frequently quoted union official[6]. The other two promotions[7] were sergeants and vice-presidents for different institutions exactly like plaintiff.

---

6       Q. [Is there] Anybody that was a member of the executive board along with you in 2004 who was quoted in the newspaper as saying something that was actually promoted?
        A. Okay, I think Dave Knight was a corporal and was promoted to sergeant. I think that just happened in maybe in 2006.
 (Justice Tr. p.93, line 13 to line 19, A 26)

7       Q. Do you have any members of the executive board that have been promoted out of the union?
        A. A lot of people got promoted out of the union.
        Q. In 2003 and 2004?
        A. 2003, 2004? I'm not sure about 2003, 2004. It's a possibility – latter part of 2004 – well, a couple of people that was with the union got promoted.
        Q. Who would they be?
        A. Alan Pedrick, Lisa Davis.
        Q. And they were in the executive board, do you remember what their positions were?
        A. Alan Pedrick was vice-president at Gander Hill. Lisa Davis was vice-president at DCC.
        Q. Do you know in Pedrick's case what he was promoted to?
        A. Lieutenant.
        Q. And Davis?
        A. Lieutenant.
        (Justice Tr. p.69, line 23 to p. 70, line 16, A 20-21)

In fact, every employee in the Department is a union member except the very top management.  (Justice Tr. p. 67-68, 73, line 5 - line 17, A 20-21)  Which means that the interview panel was made up of different union members.  The record reveals that there is no connection between anyone's union activity and the interviewing panel's recommendation.  The objective record reveals that plaintiff had previously sought the same CWPC position in 1999 and 2001, but was found unqualified.  Additionally, plaintiff had taken the Correctional Counselor's test on a prior occasion and had not passed it. (Justice Tr. 54, line 10 -17, A 17)  Defendants do not suggest that plaintiff was not a good and effective employee as a Correctional Sergeant.  He was both an able and trustworthy member of the security staff.  However, defendants do submit that the record makes it clear that there is simply no connection between plaintiff's union activity, and his not being recommended for the position he sought.

For the above reasons, there is no adverse employment action that is causally connected to any protected activity and defendants are entitled to summary judgment in their favor.

## ARGUMENT III.

DEFENDANT MACHTINGER IS ENTITLED TO QUALIFIED IMMUNITY EVEN IF PLAINTIFF COULD ESTABLISH ANY PROTECTED CONDUCT AND ANY ADVERSE EMPLOYMENT ACTION, SINCE THE BOUNDARIES OF THE LAW AS TO WHAT IS CLEARLY ESTABLISHED HAS NOT BEEN DETERMINED.

In Argument II, defendant Machtinger demonstrated that the record is undisputed that plaintiff did not engage in any protected activity, that plaintiff has not suffered any adverse employment action and that there is no evidence of retaliation by Machtinger. Despite the lack of a prima facie case, the individual defendant would be entitled to qualified immunity in any event due to the present state of the law surrounding First Amendment retaliation in the public employment context.

There is no case law that suggests that plaintiff could vicariously claim the First Amendment rights of others in union activity during the relevant period of June to August 2004.  Instead, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Hill v. Borough of Kuztown*, 455 F.3d 225, 244 (3d Cir 2006).  This legal analysis results in a case-by-case determination by the Court after the fact. Defendant Machtinger is entitled to qualified immunity as it has not been clearly established that anything he did in the present matter violates the law.

The Third Circuit recently reiterated what is the scope of qualified immunity. "This immunity is broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.' " (internal citations omitted) *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007).

## <u>CONCLUSION</u>

For the above reasons, the Court should grant summary judgment to all defendants

on all claims.

Respectfully submitted,

STATE OF DELAWARE
DEPARTMENT OF JUSTICE


<u>/s/ Marc P. Niedzielski</u>
Marc P. Niedzielski (ID 2616)
Stephani J. Ballard (ID 3481)
Deputy Attorneys General
820 North French Street
6th Floor
Wilmington, DE 19801
(302) 577-8324

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on the date indicated, he caused the attached document to be electronically served on the following:

Thomas S. Neuberger, Esquire
Stephen J. Neuberger, Esquire
Thomas S. Neuberger, P.A.
2 E. Seventh St., Suite 302
Wilmington, DE 19801
TSN@Neubergerlaw.com
SJN@Neubergerlaw.com

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

  /s/ Marc P. Niedzielski
Marc P. Niedzielski, I.D. #2616
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

DATED:  February 26, 2008

# <u>Unreported Decision</u>

Department of Correction v. Justice and MERB, C.A. No. 06A-12-006 (RBY), (Del.Super. Aug. 23, 2007)

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| DEPARTMENT OF CORRECTIONS | : | |
| ("DOC"), | : | C.A. NO.: 06A-12-006 (RBY) |
| | : | |
| Appellant/ | : | |
| Employer-Below , | : | |
| | : | |
| v. | : | |
| | : | |
| WILBUR F. JUSTICE, | : | |
| | : | |
| Appellee/ | : | |
| Grievant-Below, | : | |
| | : | |
| and the | : | |
| MERIT EMPLOYEE RELATIONS | : | |
| BOARD, | : | |
| | : | |
| Appellee. | : | |

Submitted: May 18, 2007
Decided: August 23, 2007

Kevin R. Slattery, Esq., Department of Justice, Wilmington, Delaware for Appellant.

Thomas S. Neuberger, Esq., Wilmington, Delaware for Appellee/Grievant-Below and Appellee.

*Upon Consideration of Appellant's*
*Motion for Reconsideration of Decision*
*of Merit Employee Relations Board*
**REVERSED AND REMANDED**

*OPINION AND ORDER*

Young, J.

Employer-Below/Appellant ("Appellant"), State of Delaware/Department of Correction ("DOC"), appeals the November 29, 2006 decision of the Merit Employee Relations Board ("Board") granting relief to the Grievant-Below/Appellee ("Appellee"), Wilbur Justice. For the following reasons, the Board's decision is **REVERSED** and **REMANDED**.

## FACTUAL AND PROCEDURAL HISTORY

On July 15, 2004, the Appellee, then a 22 year veteran of the DOC, submitted to the Human Resource office at the DOC an application for a position as the Community Work Program Coordinator at the Morris Community Correctional Center ("MCCC"). The application was misplaced and, as a result, the Appellee's name was excluded from the certification list of the minimally qualified candidates. Since the certification list functions as the list of candidates to be interviewed, the Appellee did not receive an appointment for an interview. On Friday, August 13, 2004, the Appellee went to the Human Resource office to speak with Senior Human Resources Technician Larry Klebart regarding the status of his application. On Monday, August 16, 2004, the Appellee, returned to the Human Resource office to follow the process. The Appellee was informed that his application had been misplaced; that he should have been on the certification list and called for an interview; that interviews were scheduled for that day and were, in fact, in progress; that he had been added to the list of interviewees, with an appointment at noon; and that, should Appellee desire, a new date for his interview could be arranged.

The Appellee was one of five people interviewed by the interview panel, which

consisted of Kent Raymond,[1] Michael Records[2] and Rosalie Jackson.[3] Following the interviews, the panel ultimately recommended Hansel Fuller to Vincent Bianco, a warden at the MCCC, who was responsible for the final hiring decision. The panel ranked the Appellee second.

Thereafter, on September 23, 2004, the Appellee filed a grievance according to the procedure outlined in the Merit Rules. The first portion of the procedure, the three step process outlined by Merit Rules 18.6 to 18.8, resulted in three decisions against the Appellee. On January 21, 2005, pursuant to Merit Rule 18.9, the Appellee appealed to the Board.

On August 3, 2006,[4] the Board held a hearing, at which testimony from Mr. Raymond, Mr. Records, Mr. Klebart, Alan Machtinger,[5] Mr. Fuller and Mr. Bianco was heard. At the hearing, the Appellee inferred that his membership in the Correctional Officers Association of Delaware, his position as Vice-President of that organization, the organization's attempt to unseat Governor Ruth Ann Minner and the organization's negotiations with the DOC, at which Mr. Machtinger was a part, played a role in his application's becoming lost; and, ultimately, his not receiving the

---

[1] At the time, Mr. Raymond was the supervisor of the Community Work Program Coordinator at the MCCC.

[2] At the time, Mr. Records was the probation supervisor at the Central Violations Probation Center.

[3] At the time, Ms. Jackson was an administrative assistant at the MCCC.

[4] The hearing was originally scheduled for June 28, 2006, but was continued so that the Appellee could obtain legal counsel.

[5] At the time, Mr. Machtinger served as the Director of Human Resources for the DOC.

3

promotion.[6] While the Board concluded that there was no direct evidence that the Appellee's position in the union was a factor, it held that the DOC committed a gross abuse of discretion in the promotion process in violation of Merit Rule 18.5(3) by not postponing the Appellee's interview so he could "get on a level playing field with the other applicants." The Board supported its decision by citing: (1) inconsistencies in Mr. Klebart's testimony regarding the date on which he actually ran the certification list, and the information he gave the Appellee regarding the certification list; (2) the differences between copies of the Appellee's application that were presented to the Board, which the Board believed were an attempt by Mr. Klebart to cover up the loss of the application; and (3) the fact that the DOC did not reschedule all the interviews. The Board ordered that, to remedy this gross abuse of discretion, the DOC must repeat the interview process including all the previous candidates who want to be considered for the position, including Mr. Fuller who has held the position for almost three years.

Following the Board's decision, the Appellant filed this appeal.

## STANDARD OF REVIEW

On appeal, the Court is charged with correcting the Board's errors of law and determining whether its findings of fact and conclusions of law are supported by substantial evidence.[7] Questions of law are reviewed *de novo*.[8] Substantial evidence

---

[6] The Appellee accomplished this through his counsel's questioning of the witnesses as he did not testify at the hearing.

[7] *DeMarie v. Delaware Dep't. of Transp.*, 2002 WL 1042088, at *1 (Del. Super.)(Applying the appellate standard for appeals from State agencies to an appeal from the Board).

[8] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)(citing *State v. Cephas*, 637 A.2d 20, 23 (Del. 1994)).

4

has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]  In addition, substantial evidence is "more than a scintilla but less than a preponderance."[10]  This Court does not have the "authority to weigh evidence, determine the credibility of witnesses or make independent factual findings."[11]

## DISCUSSION

Title 29, Chapter 59 of the Delaware Code creates the Merit System of Personnel Administration.[12]  The purpose of this system is to provide "personnel administration based on merit principles and scientific methods governing the employees of the State in the classified service consistent with the right of public employees to organize under Chapter 13 of Title 19."[13]  As part of this system, the General Assembly created the Merit Employee Relations Board,[14] whose powers include the adoption of the Merit Rules[15] and the operation of a grievance system for redress of violations of the Merit Rules.[16]

In the case *sub judice*, the Appellant contends that the Board's decision must

---

[9] *Olney v. Cooch*, 425 A.2d 610, 614 (Del.1981)(quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)).

[10] *Id.* (quoting *Cross v. Califano*, 475 F.Supp. 896, 898 (D. Fla. 1979)).

[11] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005)(citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[12] 29 *Del. C.* § 5901 *et seq.*

[13] 29 *Del. C.* § 5902.

[14] 29 *Del. C.* § 5906.

[15] 29 *Del. C.* § 5914.

[16] 29 *Del. C.* § 5931.

5

be reversed because: (1) the Board committed legal error when it concluded that the DOC committed "a gross abuse of discretion in the promotion process" or, (2) assuming the Board committed no legal error, the Board's decision was not supported by substantial evidence.

## I. The Board Committed Legal Error When It Held that the DOC Committed a Gross Abuse of Discretion in the Promotion Process.

As to the first grounds for reversal, the Appellant claims that the Board's interpretation of Merit Rule 18.5 constituted legal error. The Rule provides:

> "Grievances about promotions are permitted only where it is asserted that (1) the person who has been promoted does not meet the minimum qualifications; (2) there has been a violation of Merit Rule 2.1 or any of the procedural requirements in the Merit Rules; or (3) there has been a gross abuse of discretion in the promotion."[17]

The Appellant maintains that Merit Rule 18.5 limits the scope of grievable complaints to three scenarios illustrated by the three subsections of the Rule. The Appellant asserts that 18.5(1) applies where the person who was promoted does not meet the minimum qualifications for the job; 18.5(2) applies where the State agency violated Merit Rule 2.1 or another one of the procedural Merit Rules; and 18.5(3) applies to a situation which the State agency actually selects one candidate over another.

For the purposes of this appeal, the Appellant focuses on distinguishing Merit Rules 18.5(2) and 18.5(3). As to Merit Rule 18.5(2), the Appellant argues that the plain language of the Rule indicates that it was meant to cover procedural violations by State agencies in the promotion process, which covers all violations of procedural Merit Rules. As to Merit Rule 18.5(3), the Appellant contends that the plain language

---

[17] Delaware Dep't of Admin. Serv., State Pers. Comm'n; Merit Relations Bd., Merit Rules, DE ADC 10 450 002, Ch. 18.5 (Westlaw) (2007).

of the Rule indicates that it was intended to cover only the "promotion," which means the actual selection of one candidate over another. The Appellant maintains that this is the correct interpretation, because the agency <u>must</u> comply with Merit Rule 2.1 or the procedural mechanisms established by the Merit Rules, whereas the agency has <u>discretion</u> in the choice of one candidate over another. Therefore, the Appellant urges the Court to find that the Board committed legal error when it held that "it was a gross abuse of discretion for the [DOC] not to postpone the interviews on their own initiative to give the [Appellee] an opportunity to get on a level playing filed with the other applicants," because the Board applied the gross abuse of discretion standard to an aspect of the <u>promotion process</u> as opposed to the actual promotion. The Appellee responds by arguing that the faulty process was the problem, and that the process is part and parcel of the promotion, concluding that the Board correctly applied Merit Rule 18.5(3).

No case law, statute or Merit Rule explains the intended scope of Merit Rule 18.5(3). However, upon consideration of the appellate briefs and the Court's own reading of the Title 29, Chapter 59 and the Merit Rules, the Court concludes that the Appellant's interpretation is correct. Hence, the Board's ultimate holding constitutes an error of law. While there is no further explanation in the Merit Rules for what is meant by Merit Rule 18.5(3)'s reference to "in the promotion," the plain meaning comports with the interpretation advanced by the Appellant, which is that the gross abuse of discretion must occur in the actual choice of one candidate over another. The language is reinforced by reference to Webster's Dictionary, which defines promotion as "the act or fact of being raised in position or rank."[18] Furthermore, both

---

[18] *Webster's Third New International Dictionary of the English Language Unabridged* 1815 (1964).

7

Title 29 Chapter 59 and the Merit Rules contain provisions on promotions.[19] These provisions contain an instruction to State agencies that consideration is to be given "to the applicant's qualifications, performance record, seniority, conduct and, where practicable, to the results of competitive examinations."[20] This indicates that, for the General Assembly and the Board, the sole focus of the term "promotion" is on the decision making process resulting in the choice of one candidate over another. Therefore, in originally adopting Merit Rule 18.5(3), the Board intended it to apply only to a gross abuse of discretion in the promotion, *i.e.*, the actual selection decision, not to other decisions that might require consideration at other points in the process which results in the ultimate promotion.

As the Court has held that Merit Rule 18.5(3) is intended to address only the actual selection of one candidate over another, Merit Rule 18.5(2) can be the only provision enabling an employee to file a grievance for a deficiency in the promotion process. Accordingly, the Court concludes that the Board's decision constituted an error of law, and resulted in the Board exceeding its authority under Merit Rule 18.5(3).

**II. Assuming, *Arguendo*, that the Board Did Not Commit Legal Error, the Evidence Does Not Support a Finding of Gross Abuse of Discretion in the Promotion Process.**

Turning to the Appellant's second ground for relief, the Court notes that, assuming, *arguendo*, that the Board did not commit the aforementioned error of law, its decision is, nevertheless, not supported by substantial evidence. No specific

---

[19] *See* 29 *Del. C.* § 5918 and Delaware Dep't of Admin. Serv., State Pers. Comm'n; Merit Relations Bd., Merit Rules, DE ADC 10 450 002, Ch. 10.4 (Westlaw) (2007).

[20] *Id.*

8

definition for "gross abuse of discretion" has been provided in Title 20 Chapter 59 or in the Merit Rules. However, Delaware Courts have explicitly stated that "[d]iscretion as applied to public officers, means the power or right to act in an official capacity in a manner which appears to be just and proper under the circumstances."[21] Our Courts "will not interfere with this power or right of public officials to act unless [the Court] is convinced that it has been abused. In order to constitute an abuse of discretion by public officials, the record must demonstrate that the exercise was unreasonable, and that the ground upon which the decision was based or reason shown therefore was clearly untenable."[22] When Delaware Courts have mentioned the phrase "gross abuse of discretion" it has been in the same breath as the term "bad faith."[23] Specifically, the common law has stated that, at least in terms of the business judgment rule applicable in the corporate law, gross abuse of discretion occurs when the decision is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[24] The Board has adopted such a standard in at least one grievance proceeding[25] and, in another, it has defined the standard as a high one, "akin to reckless indifference or where there is an extreme departure from the ordinary care normally given to a situation."[26]

---

[21] *Caras v. Delaware Liquor Comm'n*, 90 A.2d 492, 494 (Del. Super.1952).

[22] *Id.*

[23] *Alinda v. Internet.com Corp.*, 2002 WL 31584292, at *4 (Del. Ch.).

[24] *Id.*

[25] *In the Matter of Michael Edwards*, MERB Docket No. 05-06-328 (2006), at 24.

[26] *In the Matter of Richard D. Smith*, MERB Docket No. 05-04-327 (2007), at 10.

This standard, even as applied by the Board in this case, does not provide that a gross abuse of discretion occurs when hindsight determines that a better course of action was available. While the process may have been managed imperfectly, there is no evidence in the record that the DOC acted beyond the bounds of reasonable judgment by not postponing the Appellee's interview or all the interviews. It was uncontroverted that: (1) Appellee went to the interview after being informed by Mr. Klebart that they were already underway and (2) that, according to Mr. Raymond's recollection, he gave the Appellee an opportunity to postpone the interview but the Appellee elected to continue.

## CONCLUSION

Accordingly, the Board's decision based on its error of law is **REVERSED** and the matter is **REMANDED** to the Board for findings of fact and conclusions of law consistent with the correct legal standard set forth in this opinion.

**SO ORDERED.**

_____
J.

RBY/sal
oc:    Prothonotary
cc:    Opinion Distribution
       Merit Employee Relations Board

10