IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **SERGEANT WILBUR F. JUSTICE,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | C.A.No. 06-497-SLR |
| : | |
| **STANLEY W. TAYLOR, JR., in his official** : | |
| **capacity as the Commissioner of Correction;** : | |
| **ALAN MACHTINGER, individually and in his** : | |
| **official capacity as the Director of Human** : | |
| **Resources of the Department of Correction; and** : | |
| **DEPARTMENT OF CORRECTION OF THE** : | |
| **STATE OF DELAWARE,** : | |
| : | |
| **Defendants.** : | |

PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED FACTS

In accord with the Court's Order dated February 4, 2008, (D.I. 48) this is plaintiff's response to defendants' statement in corresponding numbered paragraphs of (a) the material facts proving there is no genuine issue to be tried, and (b) the legal issues upon which judgment is sought.

## Introduction

1. Agreed.

2. Denied except to admit that defendant Machtinger is sued both in his individual capacity and in his official capacity as the Director of Human Resources of the Department of Correction. ("DOC"). (Complaint ¶ 5; D.I.1).

3. Agreed.

4. Agreed.

5. Denied. Plaintiff will prove that his application was mysteriously lost within four days

of the filing of his application for the position of Community Work Program Coordinator ("CWPC") at Morris Correctional Facility. (Kelbart Test. 151;[1] see Plaintiff's Short and Concise Statement in Support of his Motion for Partial Summary Judgment ("Ps' Op. Stmt.") ¶¶ 47-48; D.I.54). Then, in August of 2004, plaintiff learned that he was lied to when a Human Resources employee assured him no certification list or interviews had been scheduled, when in reality the certification list and interview schedule were already completed. (See P's Op. Stmt. ¶¶ 49-58). It was only after plaintiff confronted the HR employee that he was put on the certification list and scheduled for a last minute interview. (See Id. ¶¶ 80-89). Contrary to defense assertions, all of these acts caused plaintiff to be at a severe disadvantage during the interview process and were retaliation for plaintiff's protected activity .

## Undisputed Facts

6. Agreed.

7. Agreed.

8. Agreed and to clarify, plaintiff submitted this application to Human Resources and was given a receipted copy of his application. (See Id. ¶¶ 40).

9. Agreed that plaintiff was told in 1999 and 2001 that he was unqualified. Conversely, in 2004 DOC Human Resources admittedly reviewed plaintiff's application and determined that he met the minimum qualifications for this position. (Klebart Test. 117,123,133; see also Machtinger Test. 212).

10. Agreed that plaintiff had once taken and not passed this test which was not a job

---

[1] In accord with the Court's Order, plaintiff has not filed a supporting appendix. (See D.I. 48 ¶ 3). Instead, plaintiff has simply cited to sworn deposition testimony (cited as "Dep."), sworn testimony during plaintiff's Merit Employee Relations Board ("MERB") hearing (cited as "Test."), declarations, plaintiff's sworn amended interrogatory responses (cited as "Amend. Inter."), and documents produced during discovery.

2

requirement of the position at issue in this case. (See Justice Dep. Ex.2 (D571)).

11. Agreed that plaintiff did not learn that the interviews had been scheduled until the very day of the scheduled interviews, August 16, 2004, while he was away on vacation. (See P's Op. Stmt. ¶¶ 56-58).

12. Agreed.

13. Agreed that plaintiff did not request that his interview be rescheduled based on his experience in the DOC as an employee and as a Union representative that the DOC never postponed interviews for candidates and that if one did not make a scheduled interview, you are not considered as a candidate. (Id. ¶¶ 68-70). Defendants also did not suggest postponing the interview. (Id. ¶¶ 65-67).

14. Agreed. (Id. ¶¶ 71-72).

15. Agreed. Plaintiff's claims of retaliation are directed solely at defendant Machtinger. (Id. ¶¶ 80-83, 85-86).

16. Agreed in part, denied in part. Agreed that plaintiff did not personally engage in free speech to the media.[2] However, as a union vice-president, plaintiff was directly involved in contentious contract negotiations on behalf of the union with DOC management and engaged in free speech therein. (Id. ¶¶ 24-25).

17. Agreed and noted that plaintiff's picture appeared in The News Journal on August 7, 2004 in an article entitled "Guards, state reach deal on pay." (P439-441). This picture captured plaintiff and other union officials on their way to a court hearing in the lawsuit filed against them

---

[2] To clarify, plaintiff does not claim that his protected activity arises from speech directly to the media, rather, plaintiff's protected activity is, in part, his association with and membership in the union which was publically speaking out to the legislature, the public and the media. (See P's Op. Stmt. ¶¶ 10-29).

3

by the State of Delaware for supporting the ongoing job action by correctional officers. (Id.)

18. Agreed. (See ¶ 17 supra).

19. Denied. Defendant Machtinger admitted that it was possible his staff informed him that plaintiff applied for the CWPC position and was subsequently informed about the loss of plaintiff's application. (Machtinger Test. 178; see P's Op. Stmt. ¶¶ 41-42). Further, as the Director of Human Resources, Machtinger was admittedly involved in all DOC promotions and had access to applicant files. (Id. ¶¶ 43-46).

20. Denied. Defendant Machtinger's official DOC timecard produced by defendants in discovery instead states that he was away on vacation from July 19th through July 23rd and August 2nd through August 6th. (Machtinger Dep. Ex. 1).

21. Denied. The record is overflowing with evidence to the contrary. (See, e.g. Amend. Inter. #1.J.; Knight Decl. ¶ 110; P's Op. Stmt. ¶¶ 91-95).

22. Denied, except to admit that David Knight was promoted two years later, in 2006, outside of the relevant time period. Additionally, admitted that two pro-management union officials who did not fight hard for their union members were promoted in September and November of 2004. (Justice Dep. 100-01; Defs.' Second Interrogatory Responses (see D.I.27) #2). As plaintiff explained, "if you are on management's side when it comes to one of your fellow officers, then eventually management [has] got to take care of them." (Justice Dep. 101). Also, these promotions occurred months after the firestorm of union activity taking place in July and August had significantly died down.

23. Agreed, but different ranks belong to different unions. COAD is the correctional officer union for the ranks of Sergeant and below that was blowing the whistle on working conditions. (Justice Dep. 67).

24. Denied. Plaintiff's job duties as a Vacation Holiday Relief Sergeant instead required him to be knowledgeable in all security procedures, program functions, act as shift commander, and participate in on the job training of new employees at Morris Correctional Facility. (D153; see also D152-161).

## LEGAL ISSUES

25. Eleventh Amendment Immunity - Denied. The Supreme Court has explained that, "an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment." Missouri v. Jenkins, 491 U.S. 274, 279 (1989); Hutto v. Finney, 437 U.S. 678, 692 (1978).[3] In accord with Supreme Court precedent, this Court has previously and repeatedly rejected this same argument. See Shotzberger v. State of Delaware Department of Correction, 2004 WL 758354, *4 (D.Del. Jan. 30, 2004); Foraker v. Chaffinch, C.A.No. 02-302-JJF (D.Del. June 17, 2003) (slip op. at 2 n.1) (attached hereto as Tab A).

No injunctive relief available - Denied. See Fed.R.Civ.P. 25(d) (when an officer is sued in his official capacity and retires, "[t]he officer's successor is automatically substituted as a party."). All but one of plaintiff's requests for injunctive relief are still applicable despite his retirement. (See Compl., D.I. 1 at Wherefore Clause G-I - listing specific types of injunctive relief requested that may still be granted).[4]

26. Denied. There is abundant evidence by which plaintiff can establish the three

---

[3] Defense reliance on Kentucky v. Graham, 473 U.S. 159 (1985) is mistaken. The Supreme Court in Kentucky held that a plaintiff who prevailed in a lawsuit a public official in his individual capacity can not recover attorney's fees from the government entity when the governmental entity was not a party to the action. Id. at 167-68. This is not the case here as the DOC and Taylor were properly named defendants in this action.

[4] Plaintiff's request for instatement to the position he was denied has been mooted by plaintiff's subsequent retirement.

necessary elements. First, as discussed in plaintiff's opening statement, plaintiff clearly engaged in protected First Amendment protected activity as a citizen including his association and membership in COAD, his serving as a Vice-President of COAD, and his serving on the contract negotiations team against the DOC, as well as other union activities. (See P's Op. Stmt. ¶¶ 5-37). Second, the record is sound in proving that plaintiff suffered several instances of adverse action at the hands of defendant Machtinger. (Id. ¶¶ 47-95). Third, as discussed above, there is sufficient causal evidence to show that defendants' adverse action was a "substantial" or "motivating factor" in the relevant decision. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000); Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Lastly, defendants have waived their same decision anyway defense which is an "affirmative defense," Nicholas v. Pa. State Univ., 227 F.3d 133, 144 (3d Cir. 2000), and also is a question of fact. Hill v. City of Scranton, 411 F.3d at 127. Defendants, however, failed to plead this affirmative defense in their Answer to the Complaint as required under the Federal Rules, see Fed.R.Civ.P. 8(c) (a party must plead any "matter constituting an avoidance or affirmative defense"), so plaintiff took no discovery on this issue. (See Ans. at p.14-15). Accordingly it has been waived. See Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991).

  27. Denied. First, as noted in ¶ 26 above, plaintiff has established a constitutional violation. Second, plaintiff's right to be free of retaliation for protected union association and speech has long been established. See, e.g. Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar, 377 U.S. 1, 5 (1964) (union association); Labov v. Lally, 809 F.2d 220, 222-23 (3d Cir. 1987) (same); Pickering v. Bd. of Educ., 391 U.S. 563 (1968) (free speech); Zamboni v. Stamler, 847 F.2d 73, 80 n.7 (3d Cir. 1988) (same).

          Respectfully Submitted,

          **THE NEUBERGER FIRM, P.A.**

          /s/ Stephen J. Neuberger
          **THOMAS S. NEUBERGER, ESQ. (#243)**
          **STEPHEN J. NEUBERGER, ESQ. (#4440)**
          Two East Seventh Street, Suite 302
          Wilmington, DE 19801
          (302) 655-0582
          TSN@NeubergerLaw.com
          SJN@NeubergerLaw.com

Dated: March 14, 2008          Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I, Thomas S. Neuberger, being a member of the bar of this Court do hereby certify that on March 14, 2008, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Stephani Ballard, Esq.
> Marc Niedelski, Esq.
> Department of Justice
> 820 N. French Street, 8th Floor
> Wilmington, DE 19801

      /s/ Thomas S. Neuberger
      **THOMAS S. NEUBERGER, ESQ.**

Justice \ Briefs \ SJAB \ P's SJ Response

# Tab

# A

Case 1:06-cv-00497-SLR    Document 59-2    Filed 03/14/2008    Page 1 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SERGEANT CHRISTOPHER D. FORAKER, :
:
    Plaintiff, :
:
v. : C.A. No. 02-302-JJF
:
COLONEL L. AARON CHAFFINCH, :
individually and in his official :
capacity as Superintendent of the :
Delaware State Police, DIVISION :
OF STATE POLICE, DEPARTMENT OF :
PUBLIC SAFETY, STATE OF DELAWARE, :
:
    Defendants. :

### MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (D.I. 19). For the reasons discussed below, the Court will deny the Motion.

This is a public employee free speech retaliation case filed under 42 U.S.C. § 1983. Plaintiff Christopher D. Foraker, a Sergeant ("Sgt.") in the Delaware State Police ("DSP"), was transferred in alleged retaliation for reporting various inappropriate acts of Corporal ("Cpl.") Eddie Cathell, who was Sgt. Foraker's subordinate and an alleged personal friend of the Superintendent of the DSP, Defendant Colonel ("Col.") L. Aaron Chaffinch. Defendants have filed for summary judgment contending that Sgt. Foraker's transfer did not amount to adverse employment action and that Sgt. Foraker's speech was not protected

activity.[1]

I. Was Sgt. Foraker's Transfer An Adverse Employment Action?

On February 22, 2002, Sgt. Foraker was transferred from his position as the non-commissioned officer in charge ("NCOIC") of the Firearms Training Unit ("FTU") after having held the position for seven months, which, historically, is a very short tenure in the position. The FTU is responsible for the firearms training of all police academy recruits and the annual retraining of all 620 DSP troopers. In addition to his duties in the FTU, Sgt. Foraker also served as a member of the Special Operations Response Team ("SORT"). Sgt. Foraker's service in the SORT accounted for 53 to 71% of his overtime income. Sgt. Foraker took a leave of absence from the SORT in March 2002 and resigned from the SORT in December 2002.

Sgt. Foraker contends he was permanently transferred to the Police Academy on February 22, 2002, to a dead-end job with no

---

[1] Defendants also contend that Sgt. Foraker's Section 1983 claims for monetary damages against the Division of State Police, Department of Public Safety, State of Delaware, and Col. Chaffinch in his official capacity (the "State Defendants") must be dismissed for lack of subject matter jurisdiction. In response, Sgt. Foraker contends that he joined the State Defendants solely for the purpose of collecting attorneys' fees and costs associated with obtaining prospective relief. (D.I. 1 at ¶ 6). Because "an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment," the Court concludes that it has subject matter jurisdiction over Sgt. Foraker's claim for attorneys' fees and costs against the State Defendants. Missouri v. Jenkins, 491 U.S. 274, 279 (1989).

job description or responsibilities. Defendants contend the transfer, which involved no change in rank, base pay, or benefits, was a temporary one intended to allow Sgt. Foraker to wrap up two projects related to his work in the FTU. After three weeks at the Police Academy, Sgt. Foraker was transferred to Troop 6 as a patrol sergeant with no change in rank, base pay, or benefits. Sgt. Foraker contends that Defendants transferred him to Troop 6 after they heard about his impending retaliation lawsuit.

Defendants contend that Sgt. Foraker's temporary transfer to the Police Academy does not rise to the level of an adverse employment action because it was short term. Sgt. Foraker contends that there is a genuine issue of material fact as to whether the transfer was temporary. Viewing the facts in the light most favorable to Sgt. Foraker, the Court agrees with Sgt. Foraker. (D.I. 22 at 17 n.10). If the transfer was not temporary, it would satisfy the adverse action requirement. Torre v. Casio, Inc., 42 F.3d 825, 831 n. 7 (3d Cir. 1994)(finding transfer without loss of pay or benefits to a dead end job was an adverse action). Because there is a genuine issue of material fact regarding whether the initial transfer was an adverse action, the Court concludes that summary judgment on the issue is inappropriate.

Defendants also contend that Sgt. Foraker's subsequent

3

transfer to Troop 6 as a patrol sergeant was not an adverse action because it was a mere lateral transfer involving no change in benefits, base pay, or rank. Defendants characterize the harm to Sgt. Foraker caused by the transfer as nothing more than a bruised ego and contend that Sgt. Foraker's preference to do another job does not make the transfer an adverse action. Defendants provide a detailed comparison of the two positions and argue that Sgt. Foraker's responsibilities and chances for overtime and promotion are actually higher in the new position.

In response, Sgt. Foraker contends that the transfer to Troop 6 was an adverse employment action because he suffered monetary loss as a result of it. Sgt. Foraker contends that the emotional distress and depression caused by Defendants' retaliation made him unable to safely discharge his duties in the SORT and led to his resignation. Sgt. Foraker contends that he lost the source of 53-71% of his overtime pay due to Defendants actions. The Court concludes that, viewed in the light most favorable to Sgt. Foraker, these facts raise a genuine issue of fact for trial that precludes summary judgment.

Sgt. Foraker also contends that the transfer to Troop 6 was not a mere lateral transfer. In essence, Sgt. Foraker contends that the position of NCOIC of the FTU is significantly different from and objectively more desirable than the patrol sergeant position at Troop 6. The Third Circuit has held that a transfer

to a less desirable position can constitute an adverse employment action. <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 411-12 (3d Cir. 1999)(finding adverse action when teacher transferred to a less desirable school and lost the opportunity to teach physics); <u>Hampton v. Borough of Tinton Falls Police Dept.</u>, 98 F.3d 107, 115-16 (3d Cir. 1996)(reversing grant of summary judgment on the issue of adverse action where police officer was transferred to less desirable assignment and Department asserted transfer was merely lateral reassignment). Based on these cases, the Court concludes that the decision regarding whether Sgt. Foraker's transfer to Troop 6 was an adverse employment action is a fact bound inquiry that must be resolved by the jury.

For all of these reasons, the Court concludes that summary judgment is not appropriate as to the issue of whether Sgt. Foraker suffered an adverse employment action.

## II. Was Sgt. Foraker's Speech Protected Activity?

A public employee's claim of retaliation for engaging in protected activity is analyzed under a three-step process:

> First, plaintiff must show that the activity in question was protected. To be protected the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees. Second, plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.

5

> Finally, defendant may defeat plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct.

Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995)(internal citations omitted). Whether the speech is protected activity is a legal question for the court, whereas whether the protected activity was a substantial or motivating factor and whether the same actions would have been taken absent the protected activity are questions of fact for the jury. Id. at 892 n.3; see also Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001).

"An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community ... The public concern inquiry is a legal one, to be determined by the content, form, and context of a given statement, as revealed by the whole record." Watters, 55 F.3d at 892. "The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" Baldassare, 250 F.3d at 195.

Sgt. Foraker contends that his speech, which consisted of several reports and email messages delivered to his superiors in the DSP, concerned a subordinate who lied on the job, failed to perform his job duties, had dangerously high levels of lead in

6

his blood, and sexually harassed a female civilian. Sgt. Foraker contends that these issues are a matter of public concern because they relate to wrongdoing by a public official.

Defendants contend that Sgt. Foraker's speech was not protected activity because it was communicated internally as part of his normal job duties. However, in <u>Givhan v. Western Line Consolidated School District</u>, 439 U.S. 410, 415-16 (1979), the United States Supreme Court stated: "[t]he First Amendment forbids abridgment of the 'freedom of speech.' Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." Moreover, the Third Circuit has noted that:

> the community's interest in the free exchange of information and ideas relating to matters of public concern is not limited to public declarations. That interest is implicated in internal exchanges as well as in exchanges between an individual and members of the public. Internal dissemination of information and ideas can be as important to effective self-governance as public speeches. Thus, if the content and circumstances of an internal communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that communication is public concern speech, even though it occurred in a private context.

<u>Baldassare</u>, 250 F.3d at 198 (internal punctuation omitted).

Because Sgt. Foraker's communications attempted to bring to

light wrongdoing on the part of a government official,[2] the Court concludes that the communications, when viewed in the light most favorable to the nonmovant, involved a matter of public concern. The Court further concludes, based on <u>Baldassare</u>, that the internal nature of Sgt. Foraker's communications does not deprive

---

[2] The DSP originally used lead based ammunition for firearms training; however, there came a time when the DSP realized that it needed to stop using lead based ammunition because of its hazardous side-effects, such as long-term, permanent damage to the nervous system. Thus, after building a multi-million dollar indoor range and spending $500,000 to upgrade its air handling system to eliminate lead particles discharged in the air, the DSP began using lead free handgun ammunition. Nonetheless, because there is not an adequate substitute, all shotgun ammunition remains lead based.

Because of the health hazards posed by lead based ammunition, Troopers working in the FTU are required to have their blood tested every 90 days to evaluate the lead levels in their blood. There are wide ranges of medical opinion as to what constitutes acceptable levels of lead in the bloodstream, but Sgt. Foraker was told by his superiors that a level of 20 was dangerous.

Cpl. Cathell's lead levels were consistently two to three times higher than any other Trooper at the FTU, even after the change to non-lead based handgun ammunition. Sgt. Foraker took steps to reduce Cpl. Cathell's exposure to lead and repeatedly asked Cpl. Cathell if he was doing anything off duty that could be adversely affecting his blood lead levels. Over the course of several years, Cpl. Cathell denied that he was doing anything which could be contributing to his abnormally high lead levels.

In October 2001, after Cpl. Cathell's lead levels came in more than twice as high as the next FTU Trooper, Cpl. Cathell admitted to Sgt. Foraker that he had been loading and reloading lead based ammunition for off duty shooting competitions. Sgt. Foraker subsequently reported to his superiors that Cpl. Cathell's lead levels were in the high teens and that Cpl. Cathell had been lying to his superiors about the cause of his high lead levels. Sgt. Foraker also reported that Cpl. Cathell was suffering from lesions, headaches, blurred vision, and tingling fingers. Finally, in January 2002, Sgt. Foraker reported that Cpl. Cathell's lead level had hit 20, which was the danger level set by Sgt. Foraker's superiors.

8

them of First Amendment protection. Once a court determines that the speech regards a matter of concern, it must evaluate whether the employee's interest in the expression is outweighed by any injury the speech could cause to the state's interest in providing efficient public services. <u>Watters</u>, 55 F.3d at 892. Here, Sgt. Foraker's interest in reporting unacceptable behavior by a subordinate is very high and actually serves to increase the efficiency of the State Police. Thus, the Court concludes that the balance tilts in favor of treating Sgt. Foraker's speech as protected activity.

NOW THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (D.I. 19) is **DENIED**.


June 17 2003
DATE

Joseph Farnan
UNITED STATES DISTRICT JUDGE