IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILBER F. JUSTICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-497-SLR |
| | ) |
| CARL C. DANBERG et. al., | ) |
| | ) |
| Defendants. | ) |

Thomas S. Neuberger, Esq. and Stephen J. Neuberger, Esq. of The Neuberger Firm, Wilmington, Delaware. Attorneys for Plaintiff.

Marc P. Niedzielski, Esq. and Stephani J. Ballard, Esq., Deputy Attorneys General, State of Delaware Department of Justice, Wilmington, Delaware. Attorneys for Defendants.

**MEMORANDUM OPINION**

Dated: July 29, 2008
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Wilbur F. Justice ("plaintiff") filed this action against defendants Carl C. Danberg,[1] in his official capacity as Delaware Department of Correction ("DOC") Commissioner ("Commissioner"), Alan Machtinger, individually and in his official capacity as DOC Director of Human Resources ("Machtinger"), and the DOC of the State of Delaware (collectively "defendants"), pursuant to 42 U.S.C. § 1983 alleging a denial of promotion in retaliation for plaintiff's involvement in union activities in violation of United States Constitution Amendment I. More specifically, plaintiff claims that defendants intentionally misplaced his application for promotion in retaliation for his union activities, placing him in a disadvantaged position compared to the other candidates and preventing him from attaining the promotion. Before the court is defendants' motion for summary judgment and plaintiff's motion for partial summary judgment. (D.I. 50, 53) For the reasons stated below, the court finds that plaintiff did engage in a constitutionally protected activity and suffered an adverse employment action; the court, therefore, grants plaintiff's motion for partial summary judgment. (D.I. 53) Consistent with the court's order of February 4, 2008 (D.I. 48), the court finds that a genuine issue of material fact remains as to whether plaintiff's activity was a substantial or motivating factor in the adverse action. Defendants have failed to carry their burden to show otherwise; accordingly, defendants' motion for summary judgment is denied.

---

[1]This action was originally filed in August of 2006 when Stanley W. Taylor ("Taylor") was Commissioner. Taylor retired on February 1, 2007 and Carl C. Danberg, the current Commissioner, is substituted as defendant pursuant to Fed. R. Civ. P. 25(d).

## II. BACKGROUND[2]

Plaintiff worked at the DOC of the State of Delaware since 1982. (D.I. 52 at A7) He worked various positions within the DOC, rising through the ranks to be promoted to sergeant in 1988. (Id. at A8) In 1999 and in 2001, plaintiff applied for the lieutenant position of Community Work Program Coordinator ("CWPC") at the Morris Community Correctional Center ("MCCC") in Dover, Delaware; both times he was informed he did not meet the minimum qualifications. (Id. at A56) Later in 2001, he applied for and received a transfer to MCCC as a sergeant. (Id. at A9)

Beginning in 2002 and continuing into 2004, the Correctional Officers Association of Delaware ("COAD"), the union that represents all correctional officers with the rank of sergeant and below, and other unions representing employees of the DOC entered into a series of contract negotiations concerning working conditions and hours with the DOC. (Id. at A39) In 2003, plaintiff became a vice president in COAD and joined the executive board responsible for collective bargaining. (Id. at A20) The negotiations initially were attempted via face-to-face meetings; however, by 2004 the negotiations were handled with each bargaining unit in a separate room and the two sides passing proposals back and forth. (Id. at A23) Plaintiff, as a vice president of COAD representing officers from MCCC, was involved in these negotiations. (Id.)

---

[2]Defendants filed a brief in support of their motion for summary judgment (D.I. 51) and an appendix (D.I. 52). Pursuant to the court's order of February 4, 2008 (D.I. 48), defendants also filed a short and concise statement of undisputed facts and legal issues. (D.I. 58) Plaintiff filed a responsive statement (D.I. 59) as well as a statement in support of his motion for partial summary judgment (D.I. 54) to which defendants responded (D.I. 60). Plaintiff was not required to submit a reply brief and, as a result, all facts recited by the court are from defendants' appendix.

Defendant Machinger as Director of Human Resources at the DOC also took part. (Id. at A36)

These negotiations proceeded against a backdrop of a gubernatorial election campaign and substantial media coverage of DOC negotiations and of working conditions within DOC facilities. (Id. at A68-69) Media reports covered a variety of security breakdowns, such as the escape of an inmate in late 2003 and an inmate attempting suicide while on trial in April 2004. (Id. at A81) In June of 2004, a private security expert issued a negative report detailing a number of security lapses and serious flaws in procedure. (Id.) COAD began a vocal campaign against the incumbent governor and complained that staff shortages and low pay contributed to the security breakdowns at DOC facilities. (Id. at A66-73)

The events giving rise to this action developed in the months of July and August 2004. The DOC posted an announcement of vacancy for a CWPC position at MCCC on July 7. (Id. at A83) On July 12, a female correctional counselor was abducted and sexually assaulted by an inmate at the Delaware Correctional Center; this led to a six and a half hour hostage crisis and ended only after a Certified Emergency Response Team ("CERT") officer shot and killed the inmate. (Id. at A80) On July 15, plaintiff timely filed his application for the posted CWPC promotion, and received a stamped copy of the application. (Id. at A13) At some point in the next few days, plaintiff's application was lost.[3] (Id. at A83; D.I. 54 at ¶ 48; D.I. 60 at ¶¶ 47-

---

[3]There is a dispute as to whether defendant Machtinger knew about plaintiff's application and its misplacement and whether the misplacement was intentional. Defendants contend that Machtinger was not aware of plaintiff's application or its misplacement until plaintiff filed his grievance. (D.I. 60 at ¶ 41) Plaintiff claims to have

3

64) As a result, plaintiff's name was left off the certification list of qualified candidates, prepared on July 22, which functions as a list of candidates to be interviewed.[4] (D.I. 52 at 84; D.I. 51, Op. at 2)  Also on July 22, in response to the events that culminated in the assault of the female counselor, COAD members planned a seven day work action to refuse to work voluntary overtime to bring attention to what they perceived as a crisis in staffing that management was ignoring in the contract negotiations; this action was not sanctioned by COAD.  (D.I. 52 at A74)  The immediate effect of this action by union members was felt in the Court and Transportation Department of the DOC and resulted in a number of inmates missing hearing dates since those staff positions are normally filled by correctional officers working voluntary overtime  (Id. at A15)  On August 5, the DOC filed suit against COAD and the executive board members individually as a result of the union members' job action; the case was decided in favor of the union.  (Id. at A89)

    Meanwhile, plaintiff asserts that on August 10, DOC Human Resources ("HR") notified the five other employees on the certification list prepared on July 22 (which excluded plaintiff) that interviews for the CWPC position had been scheduled for August 16.  (D.I. 54 at ¶ 55; D.I. 60 at ¶¶ 47-64)  On August 13, plaintiff inquired with HR on the

---

evidence showing the contrary. (D.I. 54 at ¶ 41) Defendants also point to Machtinger's affidavit showing he was on vacation from July 19-25 and July 29-August 10. (D.I. 52 at A1) Machtinger does not have any records of July 26-28 but believes he "might have been at work." (Id.)

[4] Defendants attached to their opening brief (D.I. 51) a copy of an unreported Delaware Superior Court decision resulting from plaintiff's grievance procedure with the DOC. Del. Dept. of Corr. v. Justice, C.A. No. 06A-12-006 (RBY), slip op. at 2-4 (Del. Super. Ct. Aug. 23, 2007), hereinafter as (D.I. 51, Op. at 2-4).

4

progress of his application and was told by an HR employee that interviews had not yet been scheduled and that plaintiff was still listed as an applicant for the CWPC position. (D.I. 54 at ¶ 53; D.I. 60 at ¶¶ 47-64) After receiving these reassurances, plaintiff went on vacation. (D.I. 52 at A84-85) On August 16, plaintiff was informed of the interviews scheduled for the CWPC position, returned from vacation, and confronted the same HR employee about the situation. (Id. at A85) Plaintiff's name was added to the certification list and he was scheduled for a last minute interview for the same day, August 16.[5] (D.I. 54 at ¶ 64; D.I. 60 at ¶¶ 47-64)

The interview panel consisted of three individuals, the supervisor of the CWPC position Kent Raymond, probation supervisor Michael Records, and MCCC administrative assistant Rosalie Jackson. (D.I. 51, Op. at 3) The panel ranked the candidates for their performance during the interview, then made a recommendation to Warden Vincent Bianco at MCCC for the final decision. (Id.) After the interviews were completed, plaintiff placed second in the interview panel's rankings behind Hansel Fuller. (Id.) The principle distinguishing factor between Fuller and plaintiff was stated to be the former's "on his feet performance and his ability to clearly and concisely answer questions."[6] (D.I. 54 at ¶ 87; D.I. 60 at ¶¶ 80-89) The panel recommended Fuller to Warden Bianco; Fuller was offered, and accepted, the position. (D.I. 51, Op. at 3) On September 23, 2004, plaintiff filed a grievance under Delaware law. (Id.) This

---

[5] The parties dispute whether the DOC suggested that plaintiff would be allowed to postpone the interview to prepare. Compare (D.I. 54 at ¶¶ 65-70) with (D.I. 60 at ¶¶ 65-70).

[6] Although defendants deny allegations concerning plaintiff's disadvantaged position, this statement is not in dispute. (D.I. 60 at ¶¶ 80-89)

5

grievance being unsuccessful, plaintiff filed an appeal to the Merit Employee Relations Board ("MERB") on January 21, 2005. (Id.) The Board found in plaintiff's favor. (Id.) On August 11, 2006, plaintiff filed this suit pursuant to 42 U.S.C. § 1983 for alleged employment retaliation for exercising his First Amendment rights. Plaintiff retired from the DOC as a Sergeant on February 1, 2007. (D.I. 58 at ¶ 25) On May 18, 2007, the DOC appealed the MERB decision resulting in the Delaware Superior Court decision dated August 23, 2007, reversing MERB's decision and found in favor of defendants. (D.I. 51, Op. at 4)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party

opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Before the court is plaintiff's motion for partial summary judgment, which seeks declaratory judgment as to plaintiff's protected alleged activity under the First Amendment and plaintiff's asserted adverse employment action as detailed below. (D.I. 53) Also before the court is defendants' motion for summary judgment on grounds as discussed infra. (D.I. 50)

### A. Plaintiff's motion

In his motion for partial summary judgment, plaintiff requests declaratory judgment that he: (1) engaged in an activity protected under the First Amendment; and (2) suffered an adverse employment action. (D.I. 53)

#### 1. First Amendment protected activity

Because there are no underlying material facts in dispute concerning plaintiff's union activities, the court will address plaintiff's motion. To determine if plaintiff's activities were protected under the First Amendment, the court applies a two-step test.

First, speech by a public employee is protected only when it is made as a citizen speaking upon matters of public concern. See Pickering v. Bd. of Educ., 391 U.S. 563, 574 (1968); Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Second, the court balances the interests of the employee, as a citizen, with the interests of the employer that could provide an adequate justification for any difference in treatment. See Connick v. Myers, 461 U.S. 138, 151-52 (1983). Plaintiff asserts that he was denied the promotion in August of 2004 because he engaged in constitutionally protected activity by associating with a union. (D.I. 54 at 13) Defendants argue that plaintiff acknowledges that he engaged in no speech activities that could be considered a protected activity during the time frame relevant to the cause of action.

For plaintiff, as a government employee, to engage in constitutionally protected activity, he must do so as a citizen and not as a government official or agent speaking merely in the course of his official activities. Garcetti, 547 U.S. at 418. Defendants contend that plaintiff did not engage in protected activity because his union activity was pursuant to his official duties as a corrections officer. (D.I. 51 at 15) Defendants rely on Garcetti, which holds that speech by a public employee in the course of his or her official duties is not protected under the First Amendment because the employee would not be speaking as a "citizen on a matter of public concern."[7]  547 U.S. at 418; see also

---

[7]Defendants cite to a recent Third Circuit opinion, Hill v. Borough of Kutztown, for their interpretation of the Garcetti rule. 455 F.3d 225, 242-43 (3d Cir. 2006)  This reliance is misplaced since the Hill Court affirmed the dismissal, via Garcetti, of only the portion of Hill's claims that concerned reporting requirements that he, himself, conceded were required as "pursuant to his official duties." Id. The Court actually reversed the dismissal of Hill's First Amendment claim based on other activities that were not affected by his concession. Id.

Connick, 461 U.S. at 147 ("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). Garcetti disallows claims in circumstances only where the activity is one required by the public employee's duties since this would necessarily mean the employee was not speaking as a citizen but as a government official. 547 U.S. at 418. Put another way, Garcetti stands for the principle that the Constitution does not absolutely insulate employees, speaking as employees, from employer discipline when their respective interests are in conflict, reflecting the simple fact that "a government employer may impose certain restraints on the speech of its employees . . . that would be unconstitutional if applied to the general public." City of San Diego v. Roe, 543 U.S. 77, 80 (2004) (per curiam).

Applying this rule to the instant case, the initial question for the court is whether plaintiff was acting as a citizen or as an employee when he took part in the union negotiations. Defendants argue that since plaintiff is required to be a member of COAD by Delaware law, as are all other DOC employees of his rank or below, plaintiff's activity is not protected. (D.I. 52 at 14) This is a broad reading of the rule that seeks to disallow First Amendment protections to government employees if their activity was related in any way to their employment, a reading that has been rejected by a number of courts, including this court, since Garcetti.[8] In the first instance, while plaintiff was

---

[8]See Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ., 437 F. Supp. 2d 235, 243 (D. Del. 2006) (reading Garcetti narrowly to confine inquiry to whether the activity

9

required by Delaware law to be a member of COAD, he was not required to be a vice president in the union nor was he required to even be active in the union beyond that required by law. Defendants do not identify any evidence that the job requirements of plaintiff's position as Vacation Holiday Relief Sergeant include being a vice president representing MCCC or taking part in collective bargaining and contract negotiations. Secondly, if the court were to adopt defendants' interpretation of the rule, union activity would cease to be a fundamental right protected under the Constitution, a holding that would contradict decades of Supreme Court precedent.[9] The court declines to find that Garcetti represents an abrogation of such a well established right. Consequently, the court finds that plaintiff was acting as a citizen when participating in union negotiation activities.

Finding that he acted as a citizen, however, does not end the court's inquiry into

---

was required by a job-related duty); Pittman v. Cuyahoga Valley Career Ctr., 451 F. Supp. 2d 905, 929 (N.D. Ohio 2006) (same); Jackson v. Jimino, 506 F. Supp. 2d 105, 109 (N.D.N.Y. 2007) (rejecting the imposition of "a bright-line rule -- an all or nothing determination -- on an employee's speech even if it tangentially concerns the official's employment" under Garcetti).

[9]See Thomas v. Collins, 323 U.S. 516, 532 (1945) ("Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society."); N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33 (1937) ("[T]he right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer . . . is a fundamental right."); United Fed'n of Postal Clerks v. Blount, 325 F. Supp. 879, 883 (D.D.C. 1971) (per curiam), aff'd, 404 U.S. 802 (1971) ("The right [of public employees] to organize collectively and to select representatives for the purposes of engaging in collective bargaining is . . . a fundamental right."); Labov v. Lalley, 809 F.2d 220, 222-23 (3d Cir. 1987) ("Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action.").

plaintiff's speech. For an employee's speech to be protected, the activity must also touch on a matter of public concern. Garcetti, 547 U.S. at 418. This is an extension of the Supreme Court's First Amendment jurisprudence governing speech by public employees outlined in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983). These cases clearly established a line where government employers can discipline a public employee's speech if the employee speaks "as an employee upon matters only of private interest." Connick, 461 U.S. at 147. "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997) (citing Connick, 461 U.S. at 146). This line of cases primarily involves the protection of actual speech activities by public employees and does not explicitly confront the issue of whether the public concern requirement is applicable in free association cases. See Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 400 (3d Cir. 1992).

The United States Court of Appeals for the Third Circuit has not definitively ruled on the issue of whether the public concern requirement applies to free association claims.[10] In Sanguigni, the Third Circuit declined to rule on the issue by noting that

---

[10]Other Courts of Appeals that have confronted this issue have reached different conclusions. The Second, Fourth, Sixth, Seventh and Ninth Circuits have applied some form of the public concern test to free association claims, while the Fifth, Tenth and Eleventh have held that the public concern requirement does not apply. See Shrum v. City of Coweta, Okla., 449 F.3d 1132, 1139 n.3 (10th Cir. 2006) (detailing the various positions of the Courts of Appeals). The First Circuit has explicitly reserved judgment on the issue but has yet to rule. See Davignon v. Hodgson, 524 F.3d 91, 108 n.9 (1st Cir. 2008) (finding the issue waived since appellant did not effectively brief on the issue and assumed the public concern requirement does not apply to associational claims).

Sanguigni's claim was "based on speech that does not implicate associational rights to any significantly greater degree than the employee speech at issue in Connick" and held that Sanguigni's conduct was not a matter of public concern. 968 F.2d at 400. The Sanguigni Court explicitly noted that it did not "find it necessary to confront the issue whether Connick generally applies to claims involving the freedom of association." Id. This issue need not be resolved in the present case, either. The court finds that, regardless of whether the public concern requirement applies to plaintiff's activity, collective bargaining and contract negotiations concerning working conditions of correctional officers in the state prison system is of considerable concern to the community. See also Hitchens v. County of Montgomery, No. Civ. A. 00-4282, 2002 WL 253939, at *3 (E.D. Pa. Feb. 20, 2002) (holding that union organizing activities of a correctional officer forming the basis of a § 1983 retaliation claim touched a matter of public concern).

The second prong of the protected activity test is a balancing of the employee's interest in free expression with the governmental interest in the efficiency of its public service operations. Garcetti, 547 U.S. at 418. The government's interest is in "efficient provision of public services" and preventing employee speech that "contravene[s] governmental policies or impair[s] the proper performance of governmental functions." Id. at 418-19. While public employees maintain substantial First Amendment protections, "it does not allow them to 'constitutionalize the employee grievance.'" Id. at 420 (quoting Connick, 461 U.S. at 154). Plaintiff's interests in free association with COAD and in participating in contract negotiations and collective bargaining are of considerable personal interest and, as noted above, are recognized as fundamental

12

constitutionally protected rights.[11]  Defendants make no argument that their interests outweigh plaintiff's in any way.  It is questionable that they could, as the United States Court of Appeals for the Tenth Circuit explained in holding that the balancing test does not apply to union association claims of public employees:

> Where a public employer has negotiated with an employee union and signed a collective-bargaining agreement, it has contractually agreed to the legitimacy of the union and of its employees' association with the union. The public employer has presumably received the benefit of its bargain, and is estopped from claiming that its "interests as an employer" are inconsistent with the freedom of its employees to associate with the union or to file grievances in accordance with its procedures.

Shrum, 449 F.3d at 1139.  The court finds this reasoning compelling and concludes that the balance of these competing interests tips in plaintiff's favor to satisfy the balancing element.  Plaintiff's involvement with COAD is a constitutionally protected activity under the First Amendment.

### 2. Adverse employment action

The Supreme Court has defined an adverse employment action as "a significant change in employment status, such as hiring, firing, **failing to promote**, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (emphasis added).  It is undisputed that the DOC advertised for an open position and plaintiff applied for that position, and that plaintiff was qualified for the position and was not selected for the promotion.  Plaintiff alleges the failure to promote him was in retaliation for engaging in a protected activity.  As noted by plaintiff, whether the protected activity

---

[11]See supra note 9.

13

was a substantial or motivating factor in the alleged retaliation is a question of fact left for trial. (D.I. 54 at 14); see Baldassare v. New Jersey, 250 F.3d 188, 195 (3d. Cir 2001).

### B. Defendants' motion

Defendants filed their motion for summary judgment on three grounds: (1) plaintiff's suit is barred by the Eleventh Amendment; (2) plaintiff has failed to establish a prima facie case of First Amendment retaliation; and; (3) Machtinger is entitled to qualified immunity.

#### 1. Eleventh Amendment

Defendants first argue that the DOC and Commissioner be granted summary judgment in their favor pursuant to the Eleventh Amendment of the U.S. Constitution.[12] Defendants cite to Kentucky v. Graham, 473 U.S. 159, 170 (1985), for their contention that recovery of attorney fees is barred against a state in a § 1983 claim against a state official sued in his personal capacity. See also Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) (holding that state officials are not "persons" within the meaning of § 1983 if they are sued in their official capacity). Plaintiff contends that the DOC and Commissioner are named as parties only for the purpose of recovering attorney fees under the Civil Rights Attorney Fees Act, 42 U.S.C. § 1988, to which the Eleventh Amendment is not applicable under Missouri v. Jenkins, 491 U.S. 274, 284 (1989). The parties' arguments concerning liability of the DOC and Commissioner in his official

---

[12]The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

capacity turn on the question of whether plaintiff's suit is one primarily for retroactive relief (monetary damages) or one seeking prospective relief (injunction). See Hutto v. Finney, 437 U.S. 678, 690 (1978).

The Eleventh Amendment bars suits against states and state officials sued in their official capacity seeking retroactive relief such as monetary damages or back pay. Edelman v. Jordan, 415 U.S. 651, 668-69 (1974); Will, 491 U.S. at 71 (1989). There is no such bar, however, to suits requesting prospective relief such as an injunction. Ex parte Young, 209 U.S. 123 (1908); Edelman, 415 U.S. at 664. There is no hard and fast rule to determine whether a claim requests prospective or retrospective relief. See Hutto, 437 U.S. at 690 ("The line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief."). The Supreme Court, however, has provided guidance on this distinction stating "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" to determine if the Ex parte Young doctrine applies. Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation and citation omitted).

The relief sought in the instant case is primarily retroactive in nature. (See D.I. 1 at ¶¶ 19-21) Although there are requests for prospective relief in plaintiff's complaint, such as an injunction to force defendants to end "the continuing illegal actions," there is no evidence provided at this time to indicate an ongoing systematic campaign by the DOC to violate constitutionally protected rights of union members. (Id.) To qualify as prospective relief under Ex parte Young, plaintiff would need to be seeking to enjoin defendants from an ongoing deprivation of his rights protected under the Constitution

and federal law, much in the same way the shareholder plaintiffs sought to enjoin Edward T. Young, Minnesota Attorney General, from enforcing an unconstitutional state law. See Ex parte Young, 209 U.S. at 129. Should plaintiff prove such a systematic and ongoing deprivation of civil rights, he is entitled to attorney fees under 42 U.S.C. § 1988 ancillary to any prospective or injunctive relief the court grants under Missouri v. Jenkins, 491 U.S. at 284. The Eleventh Amendment, however, does bar any state liability under § 1988 ancillary to any retroactive relief or money damages under Kentucky v. Graham, 473 U.S. at 170.

### 2. First Amendment retaliation

Defendants next argue that plaintiff's evidence is insufficient to maintain a First Amendment retaliation claim. To establish a prima facie case for First Amendment retaliation, the plaintiff must show that: (1) he engaged in an activity protected under the First Amendment; (2) he suffered an adverse employment action; (3) his protected activity was a substantial or motivating factor in the alleged retaliatory adverse action; and (4) once that burden is met, the burden shifts to the employer to show that they would have taken the same adverse action in the absence of the protected activity. Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002). The first two elements are questions of law, while the third and fourth elements are questions of fact left to a jury. See Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004).

As the court found above, plaintiff engaged in a protected activity. Defendants argue, however, that the evidence was not sufficient to sustain plaintiff's claim because Machtinger was not aware of the application nor took any adverse action toward

plaintiff.[13]  Central to their claim is the holding of the <u>Ambrose</u> Court that, if the employer is unaware of the protected activity, it could not have been the motivating factor for the adverse employment action; a First Amendment retaliation claim must fail on these facts.  <u>See</u> 303 F.3d at 493.  This argument is unconvincing.  Both Machtinger and plaintiff indicate they knew each other and were both present during contract negotiations.  (D.I. 52 at A22, A48)  The court cannot conceive of how Machtinger was not aware of plaintiff's union activity.

Defendants also argue that Machtinger was not aware of plaintiff's application and never engaged in any adverse action against him, thus eliminating the possibility of retaliation.  (D.I. 51 at 18)  The evidence defendants put forth is Machtinger's deposition transcript where he states that he was not aware of the irregularities concerning plaintiff's application until early 2005.  (D.I. 52 at A48)  When asked if he had any personal involvement in the handling of the application, he states, "Absolutely not."  (<u>Id.</u>)  Defendants also point to Machtinger's affidavit stating that he was on vacation during part of the time period in question.  (<u>Id.</u> at A1)  Plaintiff disputes this and claims to have evidence that Machtinger may have known about the application.  (D.I. 59 at ¶ 19)  Plaintiff also argues that the temporal proximity of the events that occurred surrounding his application provides the necessary inference of a causal link between the protected activity and the alleged misplacement of his application.  (D.I. 52 at A89)  In plaintiff's

---

[13]It is important to note that at this stage, pursuant to this court's order of March 4, 2008 (D.I. 48), only defendants have briefed and submitted evidence on their motion for summary judgment, so the court is reviewing the evidence to determine if summary judgment practice is warranted or if the evidence is sufficient to deny the motion and go to trial.

17

answers to defendants' first set of interrogatories, he alleges the following circumstances:

| | |
|---|---|
| July 12: | [Corrections counselor] rape, prisoner executed |
| July 15: | Plaintiff files his application for community Work Program Coordinator |
| July 16: | COAD publicly contradicts the Governor in the media and denies her false claims that there was no shortage of correctional officers or lax security in the prisons |
| July 18: | COAD publishes an opinion piece in the media sounding the alarm that the prison system is dangerously understaffed |
| July 16-19: | HR mysteriously loses application |

(Id.) Defendant Machtinger states in his affidavit that he went on vacation on July 19. (Id. at A1) Plaintiff points out that the DOC filed the law suit against COAD and its officers on August 5. (Id. at A89) In Ambrose, the Court noted that "'suggestive temporal proximity' is relevant to establishing a causal link between the protected conduct and retaliatory action" in retaliation cases. 303 F.3d at 494 (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). Plaintiff also alleges that only his application was lost, that none of the other candidates were union officials, and that he was given false information during the application process and relied on that information to his detriment. (D.I. 52 at A90-91) Taking all the facts provided in the record that support these allegations and all reasonable inferences in plaintiff's favor, the court concludes that a reasonable jury could find that plaintiff's union activity was a motivating factor in the loss of his application, making summary judgment inappropriate at this time.

### 3. Qualified Immunity

Defendants argue that, even if a constitutional violation and retaliation were proved, Machtinger is entitled to qualified immunity. To prove qualified immunity, the court must proceed through a two step inquiry to decide: (1) whether there was, in fact,

a constitutional violation; and (2) whether that right was clearly established prior to the violation. Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). Qualified immunity is a privilege extended to public officials "insulating them from suit . . . to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). This privilege is overcome if the violated right was a "clearly established . . . constitutional right[] of which a reasonable person would have known." Id. The initial question is whether the facts show a violation of a constitutional right. See Scott v. Harris, --- U.S. ----, 127 S.Ct. 1769, 1774 (2007). Only then may the court proceed to determine if the right violated was clearly established. Id. This Supreme Court precedent expresses a preference to explore the merits of an alleged constitutional violation in plaintiff's § 1983 claim. See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). The court reserves judgment on the issue of qualified immunity until such time as an actual constitutional violation has been identified.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted and defendants' motion for summary judgment is denied.