IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILBUR F. JUSTICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-497-SLR |
| | ) |
| ALAN MACHTINGER, | ) |
| | ) |
| Defendant. | ) |

Thomas S. Neuberger, Esq. and Stephen J. Neuberger, Esq. of The Neuberger Firm, Wilmington, Delaware.  Attorneys for Plaintiff

Marc P. Niedzielski, Esq., Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware.  Attorney for Defendant.

**MEMORANDUM OPINION**

Dated:  August 16, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 11, 2006, plaintiff Wilbur F. Justice ("plaintiff") filed this action against defendants Alan Machtinger ("Machtinger"), individually and in his official capacity as Department of Correction ("DOC") Director of Human Resources ("DOC HR"), Carl C. Danberg ("Danberg"),[1] in his official capacity as DOC Commissioner, and the DOC of the State of Delaware (collectively, "defendants"), pursuant to 42 U.S.C. § 1983, alleging a denial of promotion in retaliation for plaintiff's involvement in union activities in violation of the United States Constitution Amendment I. (D.I. 1) More specifically, plaintiff claims that defendants intentionally misplaced his application for promotion in retaliation for his union activities, putting him at a disadvantage compared to the other candidates and preventing him from attaining the promotion. (Id.) On February 26, 2008, defendants moved for summary judgment, and plaintiff moved for partial summary judgment. (D.I. 50, 53) On July 29, 2008, the court denied defendants' motion and granted plaintiff's cross-motion, finding that: (1) plaintiff "engag[ed] in a constitutionally protected activity;" (2) plaintiff "suffered an adverse employment action;" and (3) "a genuine issue of material fact remain[ed] as to whether plaintiff's activity was a substantial or motivating factor in the adverse action." Justice v. Danberg, 571 F. Supp. 2d 602, 605 (D. Del. 2008).

Defendants subsequently filed an appeal, which was dismissed by the Third Circuit for lack of jurisdiction. Justice v. Danberg, 342 Fed. App'x. 837, 840 (3d Cir.

---

[1]This action was originally filed in August of 2006 when Stanley W. Taylor ("Taylor") was Commissioner. Taylor retired on February 1, 2007 and Danberg, the current Commissioner, was substituted as defendant pursuant to Fed. R. Civ. P. 25(d).

2009). Consistent with the Third Circuit's opinion, the court dismissed defendants

Danberg, the DOC of the State of Delaware, and Machtinger in his official capacity.

(D.I. 69) Presently before the court is Machtinger's motion for summary judgment.[2]

(D.I. 70) For the reasons stated below, the court grants Machtinger's motion.

## II. BACKGROUND

Plaintiff started working for the DOC in 1982. (D.I. 52 at A7) He worked various

positions within the DOC, rising through the ranks to be promoted to sergeant in 1988.

(*Id.* at A8) In 1999 and in 2001, plaintiff applied for the lieutenant position of

Community Work Program Coordinator ("CWPC") at the Morris Community Correctional

Center ("MCCC") in Dover, Delaware; both times he was informed that he did not meet

the minimum qualifications. (*Id.* at A56) Later in 2001, he applied for and received a

transfer to MCCC as a sergeant. (*Id.* at A9)

Beginning in 2002 and continuing into 2004, the Correctional Officers

Association of Delaware ("COAD"), the union that represents all correctional officers

with the rank of sergeant and below, and other unions representing employees of the

DOC entered into a series of contract negotiations with the DOC concerning working

conditions and hours. (*Id.* at A39) In 2003, plaintiff became a vice president of the

COAD and joined the executive board responsible for collective bargaining. (*Id.* at A20)

---

[2]Plaintiff contends that the court's prior decision on plaintiff's protected union association governs the outcome of this motion through the law-of-the-case doctrine. (D.I. 72 at 20 n.5) However, the parties filed more complete briefing subsequent to the Third Circuit's dismissal of defendant's appeal. Therefore, this court is not bound by its prior decision because new evidence has been submitted in connection with the alleged constitutional violation. *See Pub. Interest Research Group of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997).

2

The negotiations initially were attempted via face-to-face meetings; however, by 2004 the negotiations were handled with each bargaining unit in a separate room and the two sides passing proposals back and forth. (*Id.* at A23)  Plaintiff was involved in these negotiations as a vice president of COAD representing officers from MCCC. (*Id.*)  Machtinger, as Director of Human Resources of the DOC, also took part. (*Id.* at A36)

These negotiations proceeded against a backdrop of a gubernatorial election campaign and substantial media coverage of DOC negotiations and of working conditions within DOC facilities. (*Id.* at A68-69)  Media reports covered a variety of security breakdowns, such as the escape of an inmate in late 2003 and an inmate attempting suicide while on trial in April 2004. (*Id.* at A81)  In June of 2004, a private security expert issued a negative report detailing a number of security lapses and serious flaws in procedure. (*Id.*)  COAD began a vocal campaign against the incumbent governor and complained that staff shortages and low pay contributed to the security breakdowns at DOC facilities. (*Id.* at A66-73)

The events giving rise to this action took place in the months of July and August 2004.  The DOC posted an announcement of vacancy for a CWPC position at MCCC on July 7, 2004. (*Id.* at A83)  On July 12, a female correctional counselor was abducted and sexually assaulted by an inmate at the Delaware Correctional Center; this led to a six and a half hour hostage crisis and ended only after a Certified Emergency Response Team officer shot and killed the inmate. (*Id.* at A80)  On July 15, plaintiff timely filed his application for the posted CWPC promotion, and received a stamped copy of the application. (*Id.* at A13)  At some point in the next few days, plaintiff's

3

application was lost.[3]  (*Id.* at A83; D.I. 54 at ¶ 48; D.I. 60 at ¶¶ 47-64)  As a result,

plaintiff's name was left off the certification list of qualified candidates, prepared on July

22, which functioned as a list of candidates to be interviewed.[4]  (D.I. 52 at A84; D.I. 51,

Op. at 2)  Also on July 22, in response to the events that culminated in the assault of

the female counselor, COAD members planned a seven-day work action to refuse to

work voluntary overtime to bring attention to what they perceived as a crisis in staffing

that management was ignoring in the contract negotiations; this action was not

sanctioned by COAD.  (D.I. 52 at A74)  The immediate effect of this action by union

members was felt in the Court and Transportation Department of the DOC and resulted

in a number of inmates missing hearing dates since those staff positions are normally

filled by correctional officers working voluntary overtime.  (*Id.* at A15)  On August 5, the

DOC filed suit against COAD and the executive board members individually as a result

of the union members' job action; the case was decided in favor of the union.  (*Id.* at

A89)

Meanwhile, plaintiff asserts that, on August 10, DOC HR notified the five other

employees on the July 22 certification list (which excluded plaintiff) that interviews for

the CWPC position had been scheduled for August 16.  (D.I. 54 at ¶ 55; D.I. 60 at ¶¶

47-64)  On August 13, plaintiff inquired with DOC HR on the progress of his application

---

[3]Machtinger's affidavit shows that he was on vacation from July 19-25 and July
29-August 10.  (D.I. 52 at A1)  Machtinger does not have any records of July 26-28 but
believes he "might have been at work."  (*Id.*)

[4]Machtinger attached to his pleadings a copy of an unreported Delaware
Superior Court decision resulting from plaintiff's grievance procedure with the DOC.
*Del. Dept. of Corr. v. Justice*, C.A. No. 06A-12-006 (RBY), slip op. at 2-4 (Del. Super.
Aug. 23, 2007), hereinafter as (D.I. 51, Op. at 2-4).

4

and was told by an HR employee that interviews had not yet been scheduled and that plaintiff was still listed as an applicant for the CWPC position. (D.I. 54 at ¶ 53; D.I. 60 at ¶¶ 47-64) After receiving these assurances, plaintiff went on vacation. (D.I. 52 at A84-85) On August 16, plaintiff was informed of the interviews scheduled for the CWPC position, returned from vacation, and confronted the same HR employee about the situation. (Id. at A85) Plaintiff's name was added to the certification list and he was scheduled for a last minute interview for the same day, August 16.[5] (D.I. 54 at ¶ 64; D.I. 60 at ¶¶ 47-64)

The interview panel consisted of three individuals, the supervisor of the CWPC position Kent Raymond, probation supervisor Michael Records, and MCCC administrative assistant Rosalie Jackson. (D.I. 51, Op. at 3) The panel ranked the candidates for their performance during the interview, then made a recommendation to Warden Vincent Bianco at MCCC for the final decision. (Id.) After the interviews were completed, plaintiff placed second in the interview panel's rankings behind Hansel Fuller ("Fuller"). (Id.) The principal distinguishing factor between Fuller and plaintiff was stated to be the former's "on his feet performance and his ability to clearly and concisely answer questions."[6] (D.I. 54 at ¶ 87; D.I. 60 at ¶¶ 80-89) The panel recommended Fuller to Warden Bianco; Fuller was offered, and accepted, the position. (D.I. 51, Op. at 3) On September 23, 2004, plaintiff filed a grievance under Delaware

---

[5]The parties dispute whether the DOC suggested that plaintiff would be allowed to postpone the interview to prepare. Compare (D.I. 54 at ¶¶ 65-70) with (D.I. 60 at ¶¶ 65-70).

[6]Although Machtinger denies allegations concerning plaintiff's disadvantaged position, this statement is not in dispute. (D.I. 60 at ¶¶ 80-89)

law. (*Id.*)  This grievance being unsuccessful, plaintiff filed an appeal to the Merit

Employee Relations Board ("MERB") on January 21, 2005.  (*Id.*)  The Board found in

plaintiff's favor.  (*Id.*)  On August 11, 2006, plaintiff filed this suit pursuant to 42 U.S.C. §

1983 for alleged employment retaliation for exercising his First Amendment rights.

Plaintiff retired from the DOC as a sergeant on February 1, 2007.  (D.I. 58 at ¶ 25)  On

May 18, 2007, the DOC appealed the MERB decision resulting in the Delaware

Superior Court decision dated August 23, 2007, reversing MERB's decision and finding

in favor of defendants.  (D.I. 51, Op. at 4)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of

material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 n.10 (1986).  The facts must be viewed in the light most favorable to the non-

moving party, and all reasonable inferences from the evidence must be drawn in that

party's favor.  *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009).  "Facts

that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists

from which a rational person could conclude that the position of the person with the

burden of proof on the disputed issue is correct."  *Horowitz v. Fed. Kemper Life

Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the

nonmoving party then "must come forward with 'specific facts showing that there is a

genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

However, a party opposing summary judgment "must present more than just 'bare

assertions, conclusory allegations or suspicions' to show the existence of a genuine

issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To survive a motion for summary

judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint,

and must present more than the "mere existence of a scintilla of evidence" in his favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails

to make a sufficient showing on an essential element of its case with respect to which it

has the burden of proof, the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Machtinger claims that summary judgment should be entered in his favor,

because he is entitled to qualified immunity. (D.I. 71 at 8) The court must proceed

through a two step inquiry to decide whether defendant is protected by qualified

immunity: (1) whether plaintiff has proven that there was, in fact, a constitutional

violation; and (2) whether that right was clearly established prior to the violation. *Curley*

*v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201

(2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009)).[7] If no

---

[7]In *Person v. Callahan*, the Supreme Court overruled *Saucer's* requirement that
the two prongs of the qualified immunity test be determined sequentially. 129 S. Ct. at

7

constitutional right has been violated, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Machtinger argues that plaintiff has failed to establish the first prong of the inquiry, that is, plaintiff has not produced sufficient evidence establishing that Machtinger violated plaintiff's constitutional rights by "personally interfer[ing] with the application process." (D.I. 71 at 12)[8]  When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[9]  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on

818 (holding that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

[8]Machtinger contends, as well, that plaintiff's union negotiation conduct is not protected by the First Amendment.  The court agrees, but has proceeded on the basis that the union's other conduct (e.g., the media campaign against the then current administration) constituted protected activities in which plaintiff arguably participated.

[9]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See Iqbal*, 219 S. Ct. at 1944.  The Supreme Court found the allegations facially insufficient. *See id.* at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or [] wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[10] *Iqbal*, 129 S. Ct. at 1949. "Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

In the case at bar, plaintiff has proffered no evidence establishing that Machtinger was personally involved in the misplacement of plaintiff's job application. Instead, plaintiff merely asserts that, after he applied for the job, his application was "mysteriously lost" by virtue of "someone" entering the Applicant Tracking System on July 16th and "chang[ing] the status [of plaintiff's application] to say plaintiff did not meet the qualifications of the position." (D.I. 72 at 12, 18) Plaintiff's only proffered evidence that Machtinger was involved is a time sheet stating that Machtinger was working on July 16th and the contention that "[e]veryone in the office, including Machtinger, [] had access to applicant files." (*Id.* at 11, 18) Plaintiff further claims that an HR employee, not Machtinger, falsely assured plaintiff that he would be scheduled for an interview when, in fact, the employee had already completed the list three weeks earlier without including plaintiff's name. (*Id.* at 12) Plaintiff was subsequently interviewed for, and denied, the posted CWPC promotion by the interview panel, of which Machtinger was not a member. (D.I. 51, Op. at 3)

---

[10]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

As is evident from the above recitation of the record, plaintiff bases his retaliation claim against Machtinger on the mere fact that, as the director of HR, Machtinger was in a position to know about the misplacement of plaintiff's job application. (D.I. 72 at 11) As the Supreme Court has held, purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities. *Iqbal*, 129 S. Ct. at 1949. Plaintiff has not proven a retaliatory motive on the part of Machtinger based on anything other than his position (i.e., plaintiff has alleged ill will against the union on the part of the DOC and/or the State of Delaware and has imputed that ill will to Machtinger because of his position as head of HR). Moreover, plaintiff has not proven an intentional act on the part of Machtinger based on anything other than his position (i.e., plaintiff has alleged that, because of his position, Machtinger had the authority and/or opportunity to control the flow of paper in HR). Plaintiff's retaliation claim is nothing more than an allegation of supervisor liability, which is not cognizable in a § 1983 action. *See Rizzo*, 423 U.S. at 376; *Davila-Bajana*, 278 F. App'x 91, 93-94 (3d Cir. 1993). With the record closed, plaintiff has not produced even the "mere existence of a scintilla of evidence" that Machtinger personally violated plaintiff's constitutional rights. *See Anderson*, 477 U.S. at 252. Because plaintiff has failed to meet his burden of showing a genuine issue of material fact as to the first prong of the qualified immunity inquiry, there is no need to engage in a further qualified immunity analysis.

10

## V. CONCLUSION

For the reasons stated above, Machtinger's motion for summary judgment (D.I. 70) is granted, as he is entitled to qualified immunity on the record presented. An appropriate order shall issue.